**BETHLEHEM MINES CORPORATION,**
**Petitioner,**

v.

**George MASSEY, Jr., Respondent,**

**and**

**Director, Office of Workers' Compensation Programs, United States Department of Labor, Intervenor.**

**No. 83–2130.**

United States Court of Appeals,
Fourth Circuit.

Argued April 6, 1984.

Decided June 5, 1984.

David A. Barnette, Charleston, W. Va. (Jackson, Kelly, Holt & O'Farrell, Charleston, W. Va., on brief), for petitioner.

Thomas H. Zerbe, Charleston, W. Va., for respondent.

Joseph T. Bednarik, U.S. Dept. of Labor, Washington, D.C., for intervenor.

Before WIDENER, SPROUSE and CHAPMAN, Circuit Judges.

SPROUSE, Circuit Judge:

Bethlehem Mines Corporation (Bethlehem) appeals from the award of disability benefits to George Massey, Jr., under the Federal Coal Mine Health and Safety Act of 1969 (Black Lung Act), as amended, 30 U.S.C. §§ 901–45. The presiding Administrative Law Judge (ALJ) ruled that Bethlehem had failed to rebut the interim presumption of total disability due to pneumoconiosis and awarded benefits. The Benefits Review Board of the Department of Labor affirmed in a short unsigned opinion. Bethlehem, on appeal, contends that its rebuttal evidence was considered under an improper legal standard. We affirm.

George Massey is a sixty-four-year-old coal miner with little formal education. He began work in the mines at age seventeen and accumulated over thirty-seven years of underground experience before disabling pulmonary problems forced his retirement in 1973. His last years of employment were marked by recurring breathing difficulties and coughing episodes. He applied for black lung benefits immediately after his retirement and received an initial certification of eligibility from the Department of Labor. Bethlehem contested his application, forcing the matter into the administrative adjudicatory system for resolution.

Soon after leaving his job with Bethlehem, Massey entered a Charleston, West Virginia, hospital complaining of shortness of breath, chest pains, and persistent coughing of blood. He was diagnosed as suffering from carcinoma of the right lung and underwent a pneumonectomy to have the lung removed. The biopsy report on the lower lobe of the removed lung con-

firmed the diagnosis of carcinoma. It also disclosed the presence of bronchitis, interstitial pneumonitis, and anthracosis, a compensable pulmonary impairment. 20 C.F.R. § 727.202. Dr. Nahatuska, the surgeon performing the pneumonectomy, prepared a post-operative report on Massey's condition indicating moderate impairment of his ventilatory functions and the presence of emphysema in his remaining left lung.

A year after his surgery, Massey was examined by Dr. Pushkin, a respiratory specialist. Dr. Pushkin concluded that Massey suffered from anthracosis and pneumoconiosis caused by years of exposure to coal dust. His conclusions were corroborated fifteen months later by two other examining physicians specializing in respiratory disorders, Dr. Rojas and Dr. Daniel. Dr. Rojas based his conclusion of pneumoconiosis largely on diagnostic tests performed by Dr. Daniel. The blood gas study conducted as part of these tests revealed serious impairment in the rate of oxygen transfer from Massey's lung alveoli to his bloodstream. Ventilatory tests confirmed serious impairment, but the results were only partially complete because Massey's physical condition prevented him from participating in the most strenuous phase of the test. Two x-rays taken in connection with the examination produced negative findings.

The ALJ, after considering all relevant medical evidence, ruled that Massey qualified for the interim presumption of total disability due to pneumoconiosis under two of the regulation's criteria. 20 C.F.R. § 727.203. He correctly noted that Massey's thirty-seven years of coal mine experience, combined with the results of his blood gas study, satisfied the requirements of 20 C.F.R. § 727.203(a)(3). He then surveyed the various examining physicians' reports and concluded that Massey also qualified for the interim presumption under section 727.203(a)(4), which provides that the presumption is invoked by "[o]ther medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establish[ing] the presence of a totally disabling respiratory or pulmonary impairment." His decision to invoke § 727.203(a)(4) was based on the findings of carcinoma and emphysema by Dr. Nahatuska, the biopsy report indicating anthracosis, and the medical opinions of Dr. Rojas and Dr. Pushkin attributing Massey's total disability to coal dust exposure.

Bethlehem's rebuttal evidence consisted of an affidavit from Dr. Swoyer, the pathologist who performed the biopsy on Massey's removed lung, and a medical report from Dr. Kress, a specialist in respiratory disorders. Dr. Swoyer confirmed his earlier biopsy findings of bronchogenic carcinoma and anthracosis, but opined that there was no evidence of clinical pneumoconiosis. He expressed the view that Massey's total disability was caused by the combined effects of the loss of lung tissue from the pneumonectomy and emphysema of the left lung. Dr. Kress, relying solely on medical reports prepared by all the examining physicians, concluded that Massey's totally disabling emphysema was the direct result of cigarette smoking. None of the examining physicians had mentioned smoking as a possible cause of Massey's emphysema.

█ The ALJ carefully weighed Bethlehem's submissions and concluded that they neither ruled out the causal nexus between Massey's total disability and coal mine employment, 20 C.F.R. § 727.203(b)(3), nor disproved his diagnosed pneumoconiosis, 20 C.F.R. § 727.203(b)(4). On appeal, Bethlehem contends that the ALJ applied the wrong legal standard in reviewing its rebuttal evidence under 20 C.F.R. 727.-203(b)(3). It maintains that the claimant's prima facie case is negated if the employer shows "that the pneumoconiosis from which the miner suffers, be it true or presumed, is not *in and of itself* totally disabling." *Jones v. The New River Company*, 3 BLR 1–199, 1–209 (1981). Bethlehem essentially urges a view of its rebuttal obligations under § 727.203(b)(3) that would allow an employer to avoid liability when it can show that the claimant's pneu-

moconiosis is but one of several factors contributing to his total disability.[1]

## I

■ The premise underlying Bethlehem's view of its rebuttal obligations is mistaken. Pneumoconiosis contracted during coal mine employment must be a causative factor in the miner's total disability, but it need not be the exclusive causative factor rendering the claimant totally disabled in order to be compensable under the Black Lung Act. *Hampton v. Department of Labor*, 678 F.2d 506, 508 (4th Cir.1982) (per curiam); *Rose v. Clinchfield Coal Co.*, 614 F.2d 936, 938–39 (4th Cir. 1980). *Accord: Carozza v. United States Steel Corp.*, 727 F.2d 74, 78 (3d Cir.1984). The regulation defining compensable pneumoconiosis makes this point emphatically:

> For the purposes of the act, "pneumoconiosis" means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. This definition includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosis-anthro-silicosis, massive pulmonary fibrosis, progressive massive fibrosis silicosis, or silicotuberculosis arising out of coal mine employment. For purposes of this definition, a disease "arising out of coal mine employment" includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment *significantly related to, or aggravated by,* dust exposure in coal mine employment.

20 C.F.R. § 727.202 (emphasis added). The Secretary of Labor (Secretary), in commenting on this provision, left no doubt as to the rationale behind its expansive language:

> The Department rejects the view that the significant aggravation of a pre-existing condition by coal dust exposure should not be considered as basis for eligibility

under the Act. It is a commonly agreed upon and salutary principle of worker's compensation law that an employer takes an employee with whatever underlying conditions the employee has. Accordingly, aggravation of a pre-existing condition to the point of disability is considered a proper basis for awarding benefits under many compensation laws. Contrary to the commentator's argument, this is a well-established principle under the Longshoremen's and Harbor Workers' Compensation Act [LHWCA], which Act sets the pattern for the consideration of claims under Part C of the Black Lung Benefits Act. The 'aggravation' question has caused considerable confusion in the past and the Department hopes that the clarification in this Section will put the matter to rest.

43 Fed.Reg. 36,825 (August 18, 1978).

■ The Secretary has adopted this same rationale in describing the employer's rebuttal obligations in cases involving claimants entitled to the ten-year presumption:

> The presumption [of total disability due to pneumoconiosis] shall be rebutted if:
>
> .    .    .    .    .
>
> (3) The evidence establishes that the total disability or death of the miner did not arise *in whole or in part* out of coal mine employment; . . .

20 C.F.R. § 727.203(b)(3) (emphasis added). The underscored language makes it plain that the employer must *rule out* the causal relationship between the miner's total disability and his coal mine employment in order to rebut the interim presumption. *Carozza*, 727 F.2d at 78; *Hampton*, 678 F.2d at 508. *See also Rose*, 614 F.2d at 939. One may find logical reasons for disagreeing with the apportioned proof burdens described in § 727.203(b)(3), but the litmus test of the regulation's validity is whether

---

**1.** Bethlehem's position finds support in several recent decisions of the Benefits Review Board, *see, e.g., Jones v. The New River Co.*, 3 BLR 1–199 (1981); *Ovies v. Director*, 3 BLR 1–610 (1981), *vacated and remanded*, 681 F.2d 815 (4th Cir.1982) (unpublished opinion). This court, however, is not bound to give special deference to the Board's rulings on issues of law. *Carozza v. United States Steel Corp.*, 727 F.2d 74, 77 (3d Cir.1984).

it complies with the provisions and purposes of the Black Lung Act.

■ The "in whole or in part" language of section 727.203(b)(3) simply reflects the current uncertain state of medical knowledge concerning the exact consequences of prolonged exposure to coal dust. The regulation does not attempt to articulate a precise medical standard of proof. Rather, its very flexibility represents a considered legal judgment that the broad remedial purposes of the Black Lung Act cannot be achieved if claimants are held to a standard of proof approaching medical certitude. 43 Fed.Reg. 36,826 (Aug. 18, 1978). The reality of coal mine employment is such that many physical and environmental factors may converge to produce a totally disabling respiratory or pulmonary impairment. The Secretary's rebuttal regulation acknowledges this reality and, consistent with the letter and spirit of the Black Lung Act and traditional workers' compensation principles, places the burden on the employer to disprove the causal relationship between coal mine employment and total disability once the claimant establishes the existence of a qualifying medical condition. *See* 30 U.S.C. § 921(c). *Cf.* 1 A. Larson, *The Law of Workmen's Compensation* § 12.20 (1982). In cases in which the combined effects of several diseases disable the miner, the employer obviously cannot meet its burden of proof by focusing solely on the disabling potential of the miner's pneumoconiosis. 20 C.F.R. § 727.203(b)(3). Its proof offering under section 727.203(b)(3) in such cases must establish that the miner's primary condition, whether it be emphysema or some other pulmonary disease, was not aggravated to the point of total disability by prolonged exposure to coal dust. *See Hampton,* 678 F.2d at 508; *Rose,* 614 F.2d at 936. *See also* 42 Fed. Reg. 36,825 (August 18, 1978). A less demanding standard would effectively remove a large class of miners from the remedial scope of the Black Lung Act—a result hardly compatible with the overarching purposes of the Act.

The wisdom of the Secretary's rebuttal evidence requirement is not for this Court to evaluate, for that judgment properly resides with Congress. Our role is limited to ensuring that the regulation creating this requirement complies with the organic legislation Congress enacted to guide the Secretary's rulemaking. In fulfilling this role in the present case, we find nothing in the Black Lung Act to indicate that the Secretary's rebuttal evidence rule exceeds its congressional mandate. In fact, the rebuttal requirement the Secretary has outlined in section 727.203(b)(3) closely mirrors the standard of rebuttal Congress itself articulated for cases involving the fifteen-year presumption of total disability under the Black Lung Act. 30 U.S.C. § 921(c)(4). *See Carozza,* 727 F.2d at 78. Moreover, there is specific legislative history indicating that Congress considered and approved of a proof scheme allowing miners to recover even if pneumoconiosis did not in and of itself cause their total disability:

> It is also intended that traditional workers' compensation principles such as those, for example, which permit a finding of eligibility where the totally disabling condition was *significantly related to or aggravated by* the occupational exposure be included in the regulations.

S.Rep. No. 95–209, 95th Cong. 1st Sess. 13–14 (1977) (emphasis added).

The Secretary has been given considerable power under the Black Lung Act to formulate regulations controlling eligibility determinations. *See* 30 U.S.C. § 921. Its exercise of that power in promulgating 20 C.F.R. § 727.203(b)(3) was within its rulemaking authority and served the broad remedial purposes of the statute. *See Carozza,* 727 F.2d at 78; *Hampton,* 678 F.2d at 508; *Rose,* 614 F.2d at 936. Accordingly, the ALJ proceeded under the correct legal standard in following the specific language of section 727.203(b)(3).

II

■ Furthermore, even if we accepted Bethlehem's interpretation of its rebuttal burden, its evidence would still be insufficient to overcome Massey's properly in-

voked presumption of total disability due to pneumoconiosis. Dr. Kress, Bethlehem's principal rebuttal witness, attributed Massey's totally disabling emphysema to cigarette smoking. In reaching this conclusion, however, Dr. Kress relied exclusively on the medical reports prepared by the other physicians, none of whom addressed the possibility that cigarette smoking caused the miner's disabling condition. A *non-examining* physician's opinion on matters not addressed by *examining* physicians is insufficient as a matter of law to rebut an interim presumption under 20 C.F.R. § 727.203. *See Kittle v. Badger Coal Co.,* 5 BLR 1–474, 1–480 to –481 (1982). Dr. Kress's conclusory opinion about cigarette smoking as the cause of Massey's disability, therefore, was properly discounted by the ALJ.

Dr. Swoyer's medical opinion likewise was insufficient to rebut Massey's prima facie case of total disability due to pneumoconiosis. Swoyer's affidavit on behalf of Bethlehem confirmed his earlier findings of carcinoma, chronic bronchitis, emphysema, and *anthracosis*, but expressed the view that Massey suffers from no "coal worker's pneumoconiosis." Dr. Swoyer's ultimate conclusion, however, is disputed by his own findings, since *anthracosis* is by definition considered compensable pneumoconiosis. *Winton v. Director,* 2 BLR 1–187, 1–196 (1979). *See also* 20 C.F.R. § 727.202. Dr. Swoyer's affidavit, therefore, was at best internally inconsistent, and certainly could not be ascribed sufficient evidentiary weight to overcome the overwhelming medical evidence supporting Massey's claim of total disability due to pneumoconiosis under any view of section 727.203(b)(3)'s meaning.

AFFIRMED.