829 F.2d 34
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
William H. CARSON, Petitioner,
v.
WESTMORELAND COAL COMPANY; Director, Office of Workers'
Compensation Programs, United States Department of
Labor, Respondent.
 No. 86-2612
 United States Court of Appeals, Fourth Circuit.
 Argued May 6, 1987.
Decided August 25, 1987.
 
 S. F. Raymond Smith, United Mine Workers of America for petitioner.
 Martin Ellison Hall (Jackson, Kelly, Holt & O'Farrell, on brief), for respondent.
 Before WIDENER and K.K. HALL, Circuit Judges, and WALTER E. HOFFMAN, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 William H. Carson ('claimant') petitions for review of an order of the Benefits Review Board denying his application for benefits under the Black Lung Benefits Act, 30 U.S.C. Sec. 901 et seq. Finding the decision to deny benefits to be without procedural error and supported by substantial evidence, we affirm.
 
 I.
 
 2
 Carson applied for benefits on July 25, 1979. The Department of Labor initially found claimant eligible for benefits and designated his last employer, Westmoreland Coal Company ('Westmoreland') as the putative responsible operator. Westmoreland then filed a timely notice of Operator Controversion and the claim was forwarded to the Office of Administrative Law Judges.
 
 
 3
 A formal hearing was held in Beckley, West Virginia, on September 29, 1983, before an administrative law judge ('ALJ'). At the time of that hearing, Carson was fifty-six years old and had worked in the coal mining industry for over thirty years. His employment history indicated that he had initially worked for Westmoreland between 1965 and 1976. Claimant was again employed by Westmoreland from March to September, 1980, and from December, 1980, until November, 1981. He ceased working in November, 1981, after suffering a severe storke.
 
 
 4
 Claimant's work history further demonstrated that while employed by Westmoreland, he worked at a variety of underground positions, including motorman and general laborer. At other times, he also worked on the belt line shoveling loose coal and assisted with haulage.
 
 
 5
 Claimant testified at the hearing that he has high blood pressure and must walk with the aid of a cane since his stroke. He further stated that he had experienced shortness of breath prior to his retirement. Claimant conceded, however, that his stroke, and not breathing problems, had forced his retirement.
 
 
 6
 The ALJ also considered a broad range of medical evidence, including the results of x-ray, pulmonary function tests, blood gas studies, and the reports of five physicians, Doctors Rasmussen, Horsman, Daniel, Larson and Kress. Doctor Rasmussen, who examined claimant in February, 1980, diagnosed a minimal pulmonary insufficiency related to coal dust exposure. Doctor Horsman opined that when he examined claimant in June, 1980, Carson possessed the respiratory capacity to perform his usual work as a miner. Doctor Daniel examined Carson on June 22, 1981, and concluded that he was not disabled from a pulmonary standpoint. Doctor Larson, who treated claimant in connection with his stroke in November, 1981, reported that he found Carson's lungs clear. Finally, Doctor Kress, a non-examining physician who reviewed the medical evidence, opined that Carson had developed early simple pneumoconiosis in 1980 but was not disabled at that time. Doctor Kress found that claimant was disabled by 1982, but attributed the disability primarily to the massive cardiovascular accident suffered in November, 1981, which had paralyzed claimant's left side, thereby limiting his breathing capacity by severely reducing his ability to expand his chest.
 
 
 7
 Based on the medical evidence, the ALJ first considered whether Carson was entitled to invoke the interim presumption of disability as provided in 20 C.F.R. Sec. 727.203(a). Although the ALJ concluded that the results of the pulmonary and blood gas studies were insufficient to invoke the presumption, he determined that two positive x-ray readings by 'B' readers and a showing of the requisite ten years of coal mining employment did invoke the presumption in Carson's favor.
 
 
 8
 Turning next to the question of whether the employer had rebutted the presumption in accordance with 20 C.F.R. Sec. 727.203(b), the ALJ first concluded that claimant's present disability precluded rebuttal based upon an ability to do 'usual' or 'comparable' work under Sec. 727.203(b)(2). The ALJ did find, however, that the interim presumption had been rebutted pursuant to Sec. 727.203(b)(3) by a showing that Carson's disability 'did not arise in whole or in part out of coal mining employment.' The latter conclusion was based primarily upon Doctor Kress's opinion that claimant's respiratory/pulmonary disability stemmed from his stroke and was only minimally related to coal mining. The application for benefits was, therefore, denied.
 
 
 9
 Carson appealed the ALJ's decision to the Benefits Review Board, arguing that the ALJ had assessed rebuttal under an incorrect legal standard. The Board found that even if the ALJ had misstated the applicable law with regard to Sec. 727.203(b)(3) rebuttal, the denial of benefits was nevertheless proper because rebuttal under the standard asserted by claimant was clearly established on the medical record. Finding the Sec. 722.203(b)(3) rebuttal issue dispositive, the Board declined to consider Westmoreland's claim that Carson's presumptive disability had also been rebutted under Sec. 727.203(b)(2).[1] This appeal followed.
 
 II.
 
 10
 On appeal, Carson contends that Sec. 727.203(b)(3) rebuttal is controlled in this Circuit by our decision in Bethlehem Mines Corp. v. Massey, 736 F.2d 120 (4th Cir. 1984). Carson argues that under Massey, an employer must rebut the presumption of disability in cases of multiple impairments by offering proof that 'the miner's primary condition . . . was not aggravated to the point of total disability by prolonged exposure to coal dust.' 736 F.2d at 124. Carson further argues that because Doctor Kress's report established only that the stroke imposed an additional pulmonary impairment and did not address the issue of aggravation, the denial of benefits is not supported by substantial evidence. We are not persuaded by claimant's argument.
 
 
 11
 Claimant's legal contentions present an issue that is not seriously in dispute. In the initial decision to deny benefits, the ALJ cited the decision of Jones v. The New River Co., 3 BLRl-199 (1981), for the proposition that a miner's disability must arise in whole out of mine employment. Under Jones, the presumption of disability can be rebutted simply by demonstrating that pneumoconiosis is but one of several factors contributing to total disability.
 
 
 12
 By the time that claimant's case reached the Benefits Review Board, the analysis in Jones had been soundly rejected by this Court in Massey, supra, for reasons substantially similar to those articulated by the Third Circuit in Carozza v. United States, 727 F.2d 74 (3d Cir. 1984). It is clear, therefore, and indeed, undisputed by Westmoreland, that Sec. 727.203(b)(3) rebuttal in this Circuit requires, under Massey, consideration of pneumoconiosis as a possible aggravating factor. That conclusion, however, provides no support for claimant in this instance.
 
 
 13
 The Benefits Review Board expressly considered Carson's challenge to the ALJ's reliance on Jones. The Board concluded that the presumption of disability had been properly rebutted even under the stricter Carozza standard. We find the Board's conclusion amply supported by the medical record.
 
 
 14
 Prior to claimant's stroke in 1981, no doctor ever opined that he was disabled or suffered from a serious impairment. Although Doctor Kress, in reviewing the medical records, did not explicitly say that the 1981 stroke would have been independently disabling regardless of any preexisting condition, that is the unmistakable implication of his report. Doctor Kress described the stroke, which claimant concedes was nonoccupationally related, as 'massive.' Kress also stated that the restrictive impairment indicated by tests after the stroke was due to 'paralysis of the muscles of the left side' rather than any change in the lungs themselves. In light of Doctor Kress's uncontested evaluation, claimant's suggestion that his stroke can be viewed as merely an additional impairment exacerbated into total disability by pneumoconiosis is unsupportable.
 
 
 15
 We conclude that there was substantial evidence to support the ALJ's initial determination that Carson's present disability 'did not arise in whole or in part out of coal mining employment.'[2] The interim presumption of disability was thereby properly rebutted. Accordingly, the decision of the Benefits Review Board sustaining the denial of benefits is affirmed.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 Westmoreland contended that a determination of whether a claimant can do his 'usual coal mine work' under Sec. 727.203(b)(2) examines only the effect of the pneumoconiosis. In Westmoreland's view, it was error for the ALJ to consider other impairments, including the stroke, at this juncture
 
 
 [2]
 We agree with the Benefits Review Board that the clear rebuttal of presumptive disability under Sec. 727.203(b)(3) renders consideration of rebuttal under (b)(2) unnecessary