59 F.3d 166
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Harry J. BENSON and Son, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, United
States Department of Labor; Eva Kearns, Widow of
Edward A. Kearns, Respondents.
 No. 93-1491.
 United States Court of Appeals, Fourth Circuit.
 Submitted: May 23, 1995
Decided: June 22, 1995
 
 W. Randolph Fife, Douglas G. Lee, STEPTOE & JOHNSON, Clarksburg, WV, for Petitioner. Thomas S. Williamson, Jr., Solicitor of Labor, Donald S. Shire, Associate Solicitor, Patricia M. Nece, Counsel for Appellate Litigation, Jill M. Otte, UNITED STATES DEPARTMENT OF LABOR, Washington, DC, for Respondents.
 Before HALL, WILKINSON, and MOTZ, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Harry J. Benson and Son, Incorporated (Benson), petitions for review of an order of the Benefits Review Board (Board) affirming the administrative law judge's (ALJ) decision to award black lung benefits to respondent Eva Kearns, the widow of Edward Kearns, a former coal miner. At issue in this appeal are the ALJ's finding that Benson failed to rebut the interim presumption of entitlement pursuant to 20 C.F.R. Sec. 727.203(b)(3) (1994), and the ALJ's decision to require Benson to secure the payment of the miner's benefits by posting security in the amount of $150,000 to the Treasurer of the United States.
 
 
 2
 Rebuttal is established under subsection (b)(3) where the party opposing entitlement to benefits establishes by a preponderance of the evidence that the miner's presumed totally disabling respiratory impairment did not arise in whole or in part out of coal mine employment. See 20 C.F.R. Sec. 727.203(b)(3) (1994). We have interpreted this language to require the party opposing entitlement to "rule out" any connection between disability and coal mine employment. See Thorn v. Itmann Coal Co., 3 F.3d 713, 718 (4th Cir.1993); Bethlehem Mines Corp. v. Massey, 736 F.2d 120, 123 (4th Cir.1984). In this case, Benson's only potential rebuttal evidence consisted of Dr. Piccirillo's opinion that coal dust exposure did not significantly contribute to the miner's totally disabling respiratory impairment. While, on appeal, Benson challenges the ALJ's decision to discount Dr. Piccirillo's opinion on the grounds that his opinion was equivocal and hostile to the spirit of the Black Lung Benefits Act, we need not address these arguments because we agree with the Board's holding that Dr. Piccirillo's opinion is insufficient as a matter of law to establish subsection (b)(3) rebuttal.
 
 
 3
 Dr. Piccirillo conceded that coal dust exposure may have been partially responsible for the miner's disabling impairment. He testified that coal dust exposure played only a minor role, estimating it to be "under five percent." Nonetheless, however, as the Board correctly concluded, such findings simply do not "rule out" any connection between disability and coal mine employment. Dr. Piccirillo's report therefore could not establish subsection (b)(3) rebuttal even had the ALJ fully credited it.* Accordingly, the ALJ's award of benefits is affirmed.
 
 
 4
 Turning to the security bond issue, the ALJ ordered the posting of security in this case because, unlike most employers potentially facing the payment of black lung benefits, Benson did not possess an insurance policy for the payment of claims. Benson does not conduct strip mining operations, but is a trucking company engaged solely in the transportation of coal from various strip mining sites. The relevant statute does not require employers such as Benson to maintain insurance or otherwise guarantee its ability to pay benefits prior to a determination of benefit eligibility, but rather provides that, upon a determination of eligibility, "the Secretary may require such employer to secure a bond or otherwise guarantee the payment of such benefits to the employee." 30 U.S.C. Sec. 932 (1988).
 
 
 5
 The regulation which implements Sec. 932(b) requires transportation employers such as Benson, once eligibility has been established, to _________________________________________________________________
 
 
 6
 "take such action as may be appropriate to guarantee the discharge of such liability." 20 C.F.R. Sec. 725.494(b) (1994). The regulation further provides that, in order to ensure the employer's ability to pay, the relevant adjudication officer "may require a deposit of security in accordance with Sec. 725.606." Id. Section 725.606 reiterates that an adjudication officer possesses the authority to require an employer to make a security deposit where he "deems it advisable," but further states that such officer "shall require the deposit of security pursuant to this section in any case where an operator or other liable employer is uninsured or has failed to secure the payment of benefits." 20 C.F.R. Sec. 725.606 (1994).
 
 
 7
 In his initial decision, the ALJ found that "[u]nder Sec. 725.606 this Office must require an uninsured employer who is found liable to post security." Then, in his decision on reconsideration, the ALJ further found that "[s]ince no evidence of insurance exists and 20 C.F.R. Sec. 725.606 mandates posting of security in such an instance, Harry J. Benson and Sons is ordered to post security in the amount of $150,000 to the Treasurer of the United States as security for the award of benefits."
 
 
 8
 In this appeal, both Benson and the Director, Office of Workers' Compensation Programs (Director), argue that the ALJ erred by construing section 725.606 to require the posting of security where an employer is uninsured. On this issue, a majority of the Board held that the ALJ "acted within the discretion granted him under Sections 725.494(b) and 725.606 in requiring employer to post a security bond in the amount of $150,000." The Board further stated that the ALJ "provided an adequate rationale for his findings based upon his determination that employer proffered no evidence of insurance or any other type of security which would guarantee the payment of benefits." One Board member dissented from this portion of the decision, however, based on her view that it was clear that the ALJ erroneously believed that a security bond was required whenever an employer fails to offer proof of insurance.
 
 
 9
 We agree with the dissenting Board member that the language employed by the ALJ in ordering a security bond leaves no doubt that he believed that Benson's failure to submit proof of insurance required Benson to post security. The ALJ's use of words such as "must" and "mandates" compel this conclusion. Moreover, while the Board majority concluded that the ALJ exercised his discretionary authority under section 725.606 and section 725.494(b) (which clarifies that the decision to order security is discretionary) in finding that Benson failed to offer proof of insurance or other security which would insure the payment of benefits, the ALJ's decisions do not mention section 725.494(b), or discuss whether Benson could prove its ability to pay through some means other than proof of insurance.
 
 
 10
 We also agree with the Director that the ALJ's interpretation of section 725.606 was erroneous. Even viewed in isolation, the plain terms of the regulation provide a liable employer with two options for satisfying the adjudication officer that it can ensure the payment of benefits: (1) by proof of insurance, or (2) by proof that it has otherwise secured the payment of benefits. The adjudication officer is not required to order security unless the employer cannot make either showing.
 
 
 11
 The matter is further clarified, however, when section 725.606 is read in conjunction with the language of Sec. 932(b) and section 725.494(b) which we previously quoted. That language conveys that employers such as Benson are not required to maintain insurance either before or after a finding of benefit eligibility, and are required to take "appropriate" steps to ensure their ability to pay benefits only after a finding of benefit eligibility. If the employer's actions do not satisfy the ALJ that the employer has ensured its ability to pay, the ALJ, under the terms of Sec. 932(b) and Sec. 725.494(b), "may" order the employer to post security. While we think that the meaning of the statute and regulations is facially clear, we note that our interpretation is consistent with that of the Director, and that we accord deference to the Director's reasonable interpretations of the regulations. See Barber v. Director, Office of Workers' Compensation Programs, 43 F.3d 899, 901 n. 6 (4th Cir.1995).
 
 
 12
 We therefore vacate that portion of the ALJ's decision which orders Benson to post security, and remand to the Board for further remand to the ALJ in order that he may determine whether Benson has taken appropriate action to secure the payment of benefits in this case. We note that if on remand the ALJ determines that security is required, he should also reconsider the amount of security which is necessary in this case. The ALJ ordered a deposit in the amount of $150,000 based on information provided by the Director regarding the average amount of benefits paid to a miner and dependent spouse. Because the miner is now deceased, and his wife is the only person currently receiving benefits, the Director concedes that the original estimation of Benson's potential liability is no longer accurate.
 
 
 13
 Accordingly, the ALJ's award of benefits is affirmed, but the ALJ's order that Benson post security is vacated, and the case is remanded for further consideration of this issue, in accordance with this opinion. We dispense with oral argument, and grant Benson's motion to submit this case on the briefs, because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.
 
 
 14
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH INSTRUCTIONS
 
 
 
 *
 Dr. Piccirillo's opinion might also, as the Director, Office of Workers' Compensation Programs (Director) contends, be insufficient to establish rebuttal under our recent decision in Grigg v. Director, Office of Workers' Compensation Programs, 28 F.3d 416, 418 (4th Cir.1994). In Grigg, we held that where the interim presumption is invoked based on a showing of pneumoconiosis by means of X-ray evidence, as in this case, a physician's finding that coal mine employment did not contribute to the miner's disability may not validly be premised on his assumption that the miner does not have pneumoconiosis. While the record contains evidence which could support the conclusion that Dr. Piccirillo improperly relied on his finding of no pneumoconiosis to find no causation in this case, we decline to resolve this issue, since it does not affect the disposition of this case, and since the Board and ALJ did not have the opportunity to consider the impact of Grigg, which was decided subsequent to the issuance of their respective decisions