UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

HAZEL EGGERS, Widow of James W.
Eggers,

*Petitioner,*

v.

CLINCHFIELD COAL COMPANY;
DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR,

*Respondents.*

No. 01-1198

On Petition for Review of an Order
of the Benefits Review Board.
(99-1244-BLA)

Argued: December 5, 2001

Decided: February 12, 2002

Before WIDENER and WILLIAMS, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

---

Vacated and remanded by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Lawrence Lee Moise, III, Abingdon, Virginia, for Eggers.
Rita A. Roppolo, UNITED STATES DEPARTMENT OF LABOR,
Washington, D.C., for Director. Timothy Ward Gresham, PENN,
STUART & ESKRIDGE, Abingdon, Virginia, for Clinchfield Coal.

**ON BRIEF:** Howard M. Radzely, Acting Solicitor of Labor, Donald S. Shire, Associate Solicitor, Patricia M. Nece, Counsel for Appellate Litigation, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Director.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Hazel Eggers, widow of the late James Eggers, appeals the decision of the U.S. Department of Labor's Benefits Review Board (BRB) to reopen the record regarding her claim to black lung benefits stemming from her late husband's employment by the Clinchfield Coal Company. Because the BRB's stated reason for reopening the record in this case is plainly insufficient, we hold, in accordance with the position urged by Mrs. Eggers and the Department of Labor's Office of Workers Compensation Programs (OWCP), that the BRB abused its discretion in reopening the record, and we reverse the denial of benefits based on the improperly augmented record, remanding the case for additional proceedings.

I.

A.

The key issue in this case is the propriety of the BRB's decision to reopen the record; thus, the lengthy procedural history of this case assumes central importance to our disposition. On August 21, 1979, James Eggers (the miner), by counsel, sent a letter to the U.S. Department of Labor which stated that his lawyers were representing him "in his claim for black lung benefits" and enclosed various documents for inclusion as "part of the record in this claim." (J.A. at 260.) The miner did not, however, file a formal claim for benefits until February 28,

1983. Clinchfield Coal, his employer for approximately forty years, contested the claim. After various administrative proceedings, a hearing was held before Administrative Law Judge (ALJ) Victor Chao on September 9, 1986. At that time, the miner argued that his attorney's 1979 letter qualified as a "claim" within the meaning of the black lung regulations. As a result, he argued that the interim Part 727 black lung regulations, codified at 20 C.F.R. § 727.203 (1999), and applicable to claims filed prior to March 31, 1980, applied to his claim, as opposed to the more restrictive Part 718 regulations, codified at 20 C.F.R. § 718.2 (2001), and applicable to claims filed after that date. In view of the potential application of the Part 727 regulations, Judge Chao remanded the case to the Department's district director to determine the filing date.[1]

On March 17, 1987, the district director held the Part 718 regulations applicable on the basis that the only filing of record was the claim filed in 1983. Following the district director's decision, a hearing was then held before ALJ Giles McCarthy on October 19, 1987. ALJ McCarthy stated that the issue of whether Part 718 or Part 727 applied was before him. The miner and Clinchfield placed additional medical evidence into the record for ALJ McCarthy's consideration. On August 24, 1988, ALJ McCarthy remanded the case to the district director for the development of further facts regarding the question of whether a claim was filed in 1979. On October 17, 1988, the district director's office again determined that the only relevant claim filed with the Department of Labor was the 1983 claim. In 1989, the case was forwarded for a hearing before an ALJ, with the prior claim issue again designated as being in dispute.

Prior to this scheduled hearing, the miner died. His widow, Hazel Eggers, filed a claim for survivor's benefits, which the district director denied on the basis that the miner's death was not due to pneumoconiosis. A hearing on both the miner's and the survivor's claims was held before ALJ John Bedford on August 17, 1989. Before ALJ Bedford, Clinchfield submitted newly-developed evidence in the form of the 1989 medical opinions of Drs. Caffrey and Fino. In its post-hearing brief, Clinchfield argued that the Part 718 regulations applied,

---

[1]*See* Part II.A *infra* for a substantive explanation of the relevant differences between the Part 727 and Part 718 regulations.

but in the alternative that even if the Part 727 regulations applied, Clinchfield had met its rebuttal burden under those regulations.

On June 4, 1990, ALJ Bedford issued a decision denying benefits. J.A. 37. He determined that the miner did not file a claim or intend to claim benefits before 1983, and thus, the more stringent Part 718 regulations applied. ALJ Bedford found that Mrs. Eggers did not carry her burden under the Part 718 regulations of showing that the miner's total disability was due to pneumoconiosis. As a corollary, ALJ Bedford held that Mrs. Eggers could not show that she was entitled to survivor's benefits.

Mrs. Eggers appealed to the BRB. The BRB affirmed the ALJ's determination that the Part 718 regulations applied because no claim had been filed until 1983, but it remanded after determining that the ALJ applied an excessively stringent standard under Part 718. Mrs. Eggers then petitioned this Court for review of the denial of her survivor's claim. *Eggers v. Clinchfield Coal Co.*, 11 F.3d 35 (4th Cir. 1993). We dismissed the appeal on ripeness grounds, holding that Mrs. Eggers' claim was too intertwined with the unresolved miner's claim to allow for proper review. *Id.* at 39-40. On remand, the case was reassigned to ALJ Charles Rippey. Judge Rippey denied benefits on November 21, 1994, on the ground that the evidence, under the Part 718 regulations, failed to prove that the miner's total disability was due to his pneumoconiosis.

Mrs. Eggers appealed to the BRB and again argued that the miner's claim had been effectively filed in 1979. The BRB agreed, and on April 29, 1996, reversed its prior holding, finding that a manifest injustice would occur if the Part 718 regulations were applied. The BRB remanded the case for reconsideration under the more lenient Part 727 standard.

On remand, in reliance on the previous record, and without a hearing, ALJ Rippey entered an order awarding benefits on the basis that the evidence was insufficient to allow Clinchfield to carry its rebuttal burden under Part 727. Clinchfield appealed to the BRB, arguing that Part 727 was applied improperly and that the parties should have had an opportunity to develop new evidence addressing rebuttal. Clinchfield also challenged ALJ Rippey's determination of the starting date

of benefits. The BRB vacated ALJ Rippey's order, finding that the Fourth Circuit had clarified the nature of the Part 727 rebuttal standard after the record closed. The BRB thus remanded with instructions to reopen the record.

On remand, the case was assigned to ALJ Clement Kichuk. ALJ Kichuk reopened the record, and both Mrs. Eggers and Clinchfield submitted additional evidence. After consideration of the old and the new evidence, ALJ Kichuk denied benefits on August 18, 1999. Because he denied benefits, ALJ Kichuk made no determination regarding the benefits starting date, with respect to which the BRB had vacated ALJ Rippey's earlier finding. ALJ Kichuk found that Clinchfield had met its burden of showing that no part of the miner's disability was due to pneumoconiosis, thus rebutting the presumption of disability created under Part 727 by the presence of pneumoconiosis. Mrs. Eggers appealed to the BRB, which affirmed the denial of benefits on December 22, 2000. Mrs. Eggers timely appealed to this Court.

B.

While the dominant issues in this case are procedural, an understanding of the basic factual outlines of the claim is essential to understanding the procedural issues raised. The miner last worked in the coal industry in June of 1983. Before retiring, he worked six or seven days a week and about two to three hours of overtime per day. According to the miner's 1986 deposition, he was not on any breathing medication or seeing any doctors while working. He stated that his breathing only became a problem after March, 1986, at which time he went into the hospital for a leg amputation. The miner provided several different smoking histories, ranging from a pack of cigarettes a week for fifteen years to one-half a pack a day since 1937. The miner died on September 14, 1988; his death certificate lists congestive heart failure due to arteriosclerotic cardiovascular disease as the cause of death.

Prior to the remand to ALJ Kichuk, Drs. Sargent, Fino, Caffrey and Naeye provided medical testimony which indicated generally that the miner's coal mine employment contributed to his respiratory impairment, at most, only to a minor extent and further, that the overall

extent of his impairment was not disabling. ALJ Rippey held that these opinions — which constituted Clinchfield's rebuttal of presumption evidence — were insufficient to meet the demanding rebuttal standard at Section (b)(3) of Section 727, which requires proof that a miner's disability did not arise in whole *or in part* out of coal mine employment. 20 C.F.R. § 727.203(b)(3). Judge Rippey's reasoning was that Drs. Sargent and Fino stated only that coal dust did not play a "significant" role in the miner's disability, that Dr. Naeye stated only that pneumoconiosis alone did not prevent the miner from engaging in hard physical work, and that Dr. Caffrey stated only that coal mining probably contributed no more than ten percent to the miner's disability. (J.A. at 372-73.) Thus, Judge Rippey reasoned, Clinchfield's evidence simply failed on its own terms to exclude the possibility that the miner's disability was due "in part" to coal mine employment.

After the record was reopened, Mrs. Eggers submitted a supplemental report produced by Dr. Robinette, who concluded that the miner's coal workers' pneumoconiosis was a significant contributing factor to his pulmonary disability and contributed to his death. Clinchfield submitted a supplemental report produced by Dr. Fino, who concluded that coal mine dust inhalation played absolutely no role in the miner's disability. Clinchfield also provided a deposition of Dr. Sargent, who testified that coal mine dust exposure did not contribute in any way to the miner's disability. ALJ Kichuk credited the newly-introduced testimony of Drs. Fino and Sargent, finding that the miner's disability was not caused by coal mine employment to any extent.

On appeal, Mrs. Eggers and the OWCP argue that on the record as it existed before reopening, Clinchfield's rebuttal evidence was insufficient as a matter of law, that this Court should reverse the BRB's decision reopening the record, as well as its affirmance of ALJ Kichuk's decision, and that we should remand the case with instructions to adopt ALJ Rippey's liability finding and to conduct additional proceedings regarding the starting date of benefits. We address each contention in turn.

## II.

### A.

The BRB's decision to reopen an evidentiary record is reviewed for abuse of discretion. *Betty B Coal Co. v. Director, OWCP*, 194 F.3d 491, 501 (4th Cir. 1999) (reopening of record is committed to ALJ's discretion);[2] *cf. Harry & Bryant Co. v. FTC*, 726 F.2d 993, 998 (4th Cir. 1984) ("Failure to reopen a record is not an error unless it is an abuse of discretion."). Questions of law are, of course, reviewed de novo. *Underwood v. Elkay Mining, Inc.*, 105 F.3d 946, 948-49 (4th Cir. 1997). Under the doctrine of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), this Court may only affirm on the grounds relied on by the BRB and may not affirm on unstated alternate grounds. *See OWCP v. Trace Fork Coal Co.*, 67 F.3d 503, 507 (4th Cir. 1995) (quoting *Chenery* for the proposition that "because the BRB's decision . . . adequately rests on alternate 'grounds upon which the agency acted,' which were addressed below, the BRB's decision . . . is affirmed"); *Grigg v. Director, OWCP*, 28 F.3d 416, 418 (4th Cir. 1994) (applying *Chenery* to a BRB decision). *Chenery* is based on the proposition that unlike lower courts, agencies exercise their discretion as the repositories of a Congressionally-delegated power to make policy; thus, just as an appellate court cannot take the place of a jury in finding facts, it may not take the place of an agency in advancing a rationale for agency action. *Chenery*, 318 U.S. at 88.

In order to evaluate the propriety of the BRB's decision to reopen the record, we must first examine the nature of the proof scheme established by the Part 727 regulations. A miner who establishes the presence of legal pneumoconiosis invokes a presumption under the Part 727 regulations that he was totally disabled by coal-mine-related pneumoconiosis prior to his death and (if applicable) that his death was due to this pneumoconiosis.[3] 20 C.F.R. § 727.203(a)(1) (1999).

---

[2]The BRB itself ordered reopening of the record in this case because it held that Clinchfield had no notice of the ALJ's intent to enter judgment and thus, no opportunity to request reopening below.

[3]In contrast, under the more stringent regulations at 20 C.F.R. Part 718, a miner is not entitled to a presumption of disability, but instead must ordinarily prove that he is totally disabled due to coal mine employment. 20 C.F.R. § 718.2 (2001). Thus, the application of Part 727 versus Part 718 in this case determines which party bears the burden of proof on the determinative issues.

This presumption may be rebutted when "the evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment . . . ." 20 C.F.R. § 727.203(b)(3). Rebuttal under subsection (b)(3) is established only when an employer meets its burden to "rule out" any causal relationship between the miner's total disability and his coal mine employment. *Bethlehem Mines Corp. v. Massey*, 736 F.2d 120, 123 (4th Cir. 1984). In 1987, the BRB held that one way of meeting this burden is to show that the miner had no respiratory or pulmonary impairment.[4] *Marcum v. Director, OWCP*, 11 BLR 1-23 (1987). In *Grigg*, 28 F.3d at 419, this Court endorsed the *Marcum* holding, stating that the "no respiratory impairment" approach was simply a means of meeting the *Massey* burden of showing that there was no causal relationship between coal mine employment and a worker's disability. *Id.* ("Our inquiry in any individual case will remain whether *Massey* is satisfied").

B.

The BRB reopened the record on the basis that this Court's decisions in *Grigg* and in *Thorn v. Itmann Coal Co.*, 3 F.3d 713 (4th Cir. 1993),[5] "clarified" the *Massey* standard for rebuttal under subsection (b)(3) of Part 727.203. (J.A. at 379.) The propriety of this reopening is the central issue in this appeal. Importantly, the BRB did not state in its decision reopening the record that the shift from Part 718 to Part 727 justified reopening. J.A. 381. While a dissenting Administrative Appeals Judge analyzed the shift from Part 718 to Part 727, we must judge the BRB majority's reasoning on its own terms.[6] In defending

---

[4]We refer to this approach as the "no respiratory impairment" approach for convenience, though it in fact requires proof of no respiratory or pulmonary impairment. *Grigg*, 28 F.3d at 416.

[5]As OWCP notes, *Thorn* did not modify *Massey* in a manner relevant to this case, and it expressly left open the question of the viability of the "no impairment" approach approved by the BRB in *Marcum v. Director, OWCP*, 11 BLR 1-23 (1987).

[6]*Chenery* does not bar affirmance of "a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transportation, Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286

the BRB's reopening of the record, Clinchfield does not discuss the *Grigg* basis which the BRB actually provided for its decision, but instead justifies reopening solely on the basis of the shift from Part 718 to Part 727 in this case. This argument is barred by the *Chenery* doctrine. We thus turn to the validity of the BRB's stated *Grigg* basis for reopening the record.

Our review of the BRB's decision to reopen the record is, of course, conducted deferentially under the abuse of discretion standard. ALJs have wide latitude to resolve procedural issues regarding the adjudication of black lung cases, and this latitude is imputed to the BRB in a case such as this one, where a party had no reasonable opportunity to request that the ALJ reopen the record before the ALJ issued a decision. *See Betty B Coal Co. v. Director, OWCP*, 194 F.3d at 501 (noting the latitude which ALJs possess to reopen the record in a case). The conclusion that a "clarification" in the law in *Grigg* justified a reopening of the record in this case is, however, totally indefensible, for several reasons. First, the essence of the *Grigg* holding was not new law when the original record in this case was developed; the BRB in *Marcum v. Director, OWCP*, 11 BLR 1-23 (1987), had adopted the *Grigg* "no impairment" holding two years before the original record closed in this case. Thus, *Grigg*'s approval of the "no impairment" approach was already binding BRB precedent when the original record was developed. *Grigg* did caution against using the "no impairment" approach either to apply a whole-man disability standard or to rebut using statements that an impairment is not dis-

---

(1974). However, when a court must speculate as to which conclusions an agency might have implicitly reached, it has reached the boundary of permissible grounds for affirmance under *Chenery*. *Maryland People's Counsel v. FERC*, 761 F.2d 768, 775 (D.C. Cir. 1985) (Scalia, Circuit Judge) (noting that *Chenery* bars affirmance based on a rationale which the court could posit as "[t]he only way to make sense of" an agency's action). Here, the BRB reasoned only that "case law [*e.g. Grigg*] issued subsequent to *Massey*" had "clarified the legal standard" for Part 727 rebuttal, and "[t]hus . . . manifest injustice would result if [Clinchfield] was denied the opportunity to have the record reopened." (J.A. at 380). When the BRB clearly states a reason for its action, it would be speculative at best for this Court to hypothesize an alternate reason which was argued to the BRB but which the BRB declined to embrace.

abling in and of itself — but, as noted in *Grigg*, the impermissibility of both approaches in a (b)(3) rebuttal context was already clear. Second, the *Grigg* holding would be a difficult conclusion to escape, because an employee with *no* respiratory impairment cannot possibly be disabled due to black lung disease, a respiratory illness which, if it "impairs," is a respiratory impairment. *Grigg*, 416 F.3d at 419 (noting "the facial logic of this reasoning").

Third, the *Grigg* holding is irrelevant to this case because there is not, and never has been, any controversy regarding whether the miner had a respiratory impairment. Examining testimony in the original record, Drs. Paranthaman, Maine, Sargent, Robinette, and Fino diagnosed respiratory impairment; Dr. Naeye stated only that the miner's pneumoconiosis was insufficient to disable him from coal mine work, a diagnosis that does not rule out respiratory impairment. Clinchfield's argument has never been that the miner was not impaired but rather that his impairment either was not severe enough to be disabling or that it resulted from tobacco use instead of coal dust exposure. Even on remand, Clinchfield could find no doctor willing to dispute the fact of respiratory impairment, and its doctors affirmatively found such an impairment. *See, e.g.*, J.A. 492 (report of Dr. Fino finding a "disabling respiratory impairment which was due to cigarette smoking"). Fourth, the BRB did not limit the reception of new evidence on remand to evidence relevant to the purported *Grigg* issue, and the new evidence that caused Clinchfield to prevail on remand — consisting of evidence that the miner's respiratory impairment was not caused to any extent by coal dust inhalation — is entirely unrelated to the *Grigg* holding because it goes to the cause of a respiratory impairment and not its existence.

Thus, the BRB's stated reason for reopening the record cannot be sustained. It plainly was improper to reopen the record based upon this Court's mere approval (with minor elaborations not relevant here) of binding BRB precedent in existence when the original record was developed, especially where the rule at issue is entirely irrelevant to this case. The BRB's reopening of the record on this basis is, "under all the facts and circumstances . . . clearly wrong," and thus constituted an abuse of discretion. *Johnson v. Hugo's Skateway*, 974 F.2d 1408, 1418 (4th Cir. 1992) (en banc). We therefore must vacate the BRB's decision to reopen the record as well as the BRB's affirmance

of ALJ Kichuk's decision, which was based on the improperly reopened record.

### III.

Mrs. Eggers and the OWCP contend that this Court should, in addition to vacating the BRB's reopening order and ALJ Kichuk's decision, simply remand with instructions to adopt ALJ Rippey's decision as to liability. This we cannot do. ALJ Rippey's decision was vacated by the BRB on the ground that the record should have been reopened; the BRB has never ruled on the merits of ALJ Rippey's conclusion that the original record failed to establish rebuttal pursuant to Part 727. This Court reviews decisions of the BRB, and review of the merits of ALJ Rippey's findings based on the original record is improper in the absence of BRB review. 33 U.S.C.A. § 921(c) (West 2001) (providing that the Court of Appeals reviews decisions of the BRB, not decisions of an ALJ which have not been reviewed by the BRB); *cf. Grigg*, 28 F.3d at 418 (stating that this Court may not affirm the BRB on grounds that it has not relied upon). Consequently, we do not reach the arguments of the parties regarding the propriety of ALJ Rippey's decision on the merits; and because we vacate ALJ Kichuk's decision on the grounds that the record was improperly augmented, we also do not reach Mrs. Eggers' challenge to the reasoning of that decision on the merits. A remand, however, must address the question of the starting date of benefits because ALJ Rippey's ruling on that issue was vacated and ALJ Kichuk did not reach the issue. Thus, there has been no determination reviewed by the BRB on the merits of the starting date of benefits.

### IV.

It is unfortunate that we must remand for additional proceedings in a case such as this one, which has been pending for over two decades. Black lung benefits claims frequently take an unusually long time to adjudicate and these delays can serve as a potent source of frustration both for benefits claimants and for employers who must defend claims based on evidence that sometimes was developed decades ago. Yet the reversible error of the BRB's decision is clear, as is our inability to reach beyond our proper role by reviewing ALJ decisions which have not been reviewed on the merits by the BRB. We are thus

constrained to vacate the BRB's order reopening the record, as well as ALJ Kichuk's decision, and remand for further proceedings in accordance with this opinion.

*VACATED AND REMANDED*