William F. CURRY, Petitioner,

v.

BEATRICE POCAHONTAS COAL COMPANY; Director, Office Of Workers' Compensation Programs, United States Department Of Labor, Respondents.

No. 94–1780.

United States Court of Appeals, Fourth Circuit.

Argued April 7, 1995.

Decided Oct. 23, 1995.

---

**ARGUED:** Lawrence Lee Moise, III, Vinyard & Moise, Abingdon, Virginia, for Petitioner. Richard Anthony Seid, Counsel for Administrative Litigation and Legal Advice, United States Department of Labor, Washington, DC, for Respondent Director; Douglas Allan Smoot, Jackson & Kelly, Charleston, West Virginia, for Respondent Beatrice Pocahontas. **ON BRIEF:** Thomas S. Williamson, Solicitor of Labor, Donald S. Shire,

Associate Solicitor, Patricia M. Nece, Counsel for Appellate Litigation, United States Department of Labor, Washington, DC, for Respondent Director.

Before WIDENER and LUTTIG, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

Reversed and remanded by published opinion. Senior Judge PHILLIPS wrote the majority opinion, in which Judge WIDENER joined. Judge LUTTIG wrote a dissenting opinion.

## OPINION

PHILLIPS, Senior Circuit Judge:

William Curry, a retired coal miner, petitions for review of the decision of the Benefits Review Board (BRB) denying him benefits under the Federal Coal Mine Health and Safety Act of 1969 (Black Lung Benefits Act), as amended, 30 U.S.C. §§ 901–45. Curry and the federal respondent, the Director, Office of Workers' Compensation Programs, contend that the Benefits Review Board (BRB) erred in affirming the decision of an Administrative Law Judge (ALJ) that denied Curry benefits on the basis that his presumptive proof of claim pursuant to 20 C.F.R. § 727.203(a)(1) had been rebutted pursuant to 20 C.F.R. § 727.203(b)(3) and

(b)(4). We agree and accordingly reverse and remand for an award of benefits.

I

After working in the coal mines for over twenty-seven years, William Curry filed for black lung benefits on May 26, 1978. The United States Department of Labor, through a district director, issued a preliminary finding of eligibility on March 9, 1979, which Beatrice Pocahontas Coal Co. (Beatrice Pocahontas), Curry's employer, contested. The Department of Labor then issued an initial determination of eligibility.

A formal hearing was held before ALJ Stuart Levin on October 11, 1979. At the hearing, Beatrice Pocahontas stipulated to the fact that Curry was entitled to the interim presumption contained in 20 C.F.R. § 727.203(a)(1). In an order dated January 18, 1980, the ALJ denied Curry benefits, finding that the (a)(1) presumption[1] had been rebutted under 20 C.F.R. § 727.203(b)(1) because Curry continued to work at his coal mining job. Curry's subsequent motions for modification and reconsideration of this order denying benefits were unsuccessful.[2]

On January 10, 1985, Curry filed a second application for benefits.[3] Because Curry had retired from his employment at Beatrice Po-

---

1. Unless otherwise noted, all references are to the provisions contained in 20 C.F.R. § 727.203.

2. Curry filed a motion for reconsideration, which was denied on April 2, 1980. Curry then filed an appeal with the BRB seeking modification of the ALJ's denial of benefits. While the appeal was pending on his motion for reconsideration, Curry filed a motion to remand the action to the Office of Administrative Law Judges because he had retired from his employment after the initial claim for benefits had been filed. On January 8, 1981, Curry also filed an appeal with the BRB seeking modification pursuant to 33 U.S.C. § 922 and 20 C.F.R. § 725.310. By order dated June 19, 1981, the BRB remanded the action to the Office of Administrative Law Judges and directed Curry to file his petition for modification with that body. The ALJ denied Curry's request for modification by order dated April 21, 1982 and later denied Curry's request for reconsideration by order dated May 13, 1982. Curry then filed a second appeal to the BRB, which was denied November 30, 1984.

3. The district director misinformed Curry that his application could not be processed because his first claim was still pending before the BRB. Arguing that the BRB had made a mistake in fact because he had retired from his job in the coal mining industry, Curry filed another petition for modification of the November 30, 1984 determination on November 13, 1985. The district director refused to modify the order denying benefits on November 19, 1986.

At a hearing on April 20, 1988, the ALJ deferred review of the merits of Curry's claim until after the parties submitted briefs on whether Curry's second application for benefits constituted a request for modification or a duplicate claim for benefits under 20 C.F.R. § 725.309. The ALJ stayed all further proceedings while awaiting the resolution of a controversial case dealing with jurisdiction over duplicate claims. On July 12, 1989, the ALJ refused to remove the stay because he found that the 1985 application constituted a duplicate claim. Ultimately, however, the presiding ALJ treated the application for benefits as a request for modification.

cahontas in January of 1981, Beatrice Pocahontas could no longer claim that the (a)(1) presumption had been rebutted by (b)(1). Beatrice Pocahontas then sought to retreat from its earlier concession that Curry was entitled to (a)(1) invocation and argued that additional X-ray evidence warranted a reconsideration of the issue. At a hearing on June 14, 1990, ALJ Giles McCarthy declined to reweigh the X-ray evidence and adopted ALJ Levin's determination that on its basis Curry was entitled to the (a)(1) presumption. The ALJ denied benefits, however, holding that the (a)(1) presumption had been rebutted under both §§ 727.203(b)(3) and (b)(4).

Curry appealed this decision to the BRB, which reviewed the ALJ's determination en banc. Due to an illness of one of its members, only four members sat on the en banc Board. Stating their belief that (b)(4) is not available for rebuttal of an (a)(1) presumption, two members voted on that basis to reject the ALJ's determination that the (a)(1) presumption had been rebutted under (b)(4). Their lead opinion purported to "vacate" the ALJ's ruling of (b)(4) rebuttal. The other two members, however, disagreed with that rationale, opining in separate "concurring and dissenting" opinions that (b)(4) may be used to rebut a(a)(1) presumption under certain, limited circumstances. Neither of these two ALJs reached the merits of Beatrice Pocahontas's argument that (b)(4) rebuttal had been established in this case. All four members of the panel, however, agreed with the ALJ's determination that the (a)(1) presumption had been rebutted by (b)(3). Accordingly, the BRB affirmed the ALJ's denial of benefits.

Curry then filed this petition for review.

## II

Curry and the Director of the Office of Workers' Compensation Programs (Director) first contend that the BRB erred in affirming the ALJ's decision that the (a)(1) presumption had been rebutted under (b)(3). As did the BRB, we engage in an independent review of the record to determine

whether there is substantial evidence in the record to support the ALJ's factual findings. *Wilson v. Benefits Review Bd.*, 748 F.2d 198, 199–200 (4th Cir.1984). We review questions of law de novo. Applying these standards, we agree with Curry and the Director that the BRB erroneously concluded that the (a)(1) presumption had been rebutted under (b)(3).

Section 727.203(a) states that:

[a] miner who engaged in coal mine employment for at least 10 years will be presumed to be totally disabled due to pneumoconiosis, or to have been totally disabled due to pneumoconiosis at the time of death, or death will be presumed to be due to pneumoconiosis, arising out of that employment, if . . .

(1) A chest roentgenogram (X-ray), biopsy, or autopsy establishes the existence of pneumoconiosis.

20 C.F.R. § 727.203(a)(1). Curry successfully invoked (a)(1) with x-ray evidence, and his entitlement to the presumptions it provides is not before us.[4] Upon successfully invoking (a)(1), a claimant has established the fact that he has pneumoconiosis, and is entitled to the further rebuttable presumptions that (1) he is totally disabled and (2) his disability is due to pneumoconiosis arising out of his coal mine employment. *Id.*

Subsection (b)(3) then provides that an employer may rebut an (a)(1) interim presumption and thereby defeat the award of benefits if "[t]he evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment." 20 C.F.R. § 727.203(b)(3). Under our decision in *Bethlehem Mines Corp. v. Massey*, 736 F.2d 120, 123 (4th Cir.1984), to succeed in rebuttal under (b)(3) an employer must "*rule out* the causal relationship between the miner's total disability and his coal mine employment." (emphasis in original). In attempting to satisfy the *Massey* standard, the employer carries the burdens of production and persuasion.

---

4. Beatrice Pocahontas did not raise this issue before the BRB and has not sought to challenge it on this petition for review.

The ALJ based his finding of (b)(3) rebuttal on the medical opinions of three physicians, Drs. Endres–Bercher, Fino, and Abernathy,[5] and the BRB affirmed the ALJ'S ruling as supported by substantial evidence. Neither the ALJ nor the BRB then had the benefit of our decision in *Grigg v. Director, OWCP*, 28 F.3d 416 (4th Cir.1994) which was handed down after the BRB's decision and while this petition for review was pending. Under *Grigg*, the finding of (b)(3) rebuttal cannot stand.

*Grigg* held that *Massey's* "rigorous standard" for rebuttal under (b)(3) can only be satisfied "where the relevant medical opinion states, without equivocation, that the [claimant] suffers *no* respiratory or pulmonary impairment of any kind." *Id.* at 419. And it further held that where the (a)(1) presumption has been invoked by x-ray proof that the claimant has clinical pneumoconiosis, medical opinions of "no impairment" offered as (b)(3) rebuttal by physicians who believe the claimant does not in fact have pneumoconiosis are "not worthy of much, if any, weight" and cannot, standing alone, satisfy *Massey's* standard. *Id.*

Under *Grigg*, the three medical opinions solely relied on by the ALJ and the BRB for (b)(3) rebuttal here fail to support that ruling.[6] Dr. Fino opined that Curry had normal lung function and was not disabled from a "functional standpoint" and that, so far as respiratory condition was concerned, he retained "the necessary functional capacity" to do certain heavy-duty coal mine work. J.A. 380–81. This was premised on his belief that Curry did not have pneumoconiosis. J.A. 380. Dr. Endres–Bercher expressly diagnosed no "*significant* pulmonary impairment" (emphasis supplied) and no "pulmonary disability" as revealed by clinical testing; he also opined that Curry "retain[ed] sufficient lung capacity" to carry on his coal mine work. J.A. 407. This was premised on his belief that Curry did not have pneumoconiosis. J.A. 406. Dr. Abernathy, by contrast, diagnosed "probable coal workers' pneumoconiosis." J.A. 433. But, he then concluded that "[i]t would appear from the studies that were done that [Curry] does have sufficient capacity to continue his regular work of operating the heavy equipment with broncitis (sic) and wheezing notwithstanding." J.A. 433. None of the three physicians, therefore, opined, "without equivocation, that [Curry] suffer[ed] *no* respiratory or pulmonary impairment of any kind." And the two who came closest to that necessary opinion believed, at odds with the established fact, that Curry did not have pneumoconiosis.

Because there was no other evidence before the ALJ to support his finding of rebuttal under (b)(3), the opinions of these three physicians do not suffice under *Massey* and *Grigg* to support that finding and it must be reversed.[7]

5. The ALJ also briefly mentioned two other physicians' reports in his determination. He stated that:

> [i]n the April, 1988 hospital consultation report, Dr. Byers notes the presence of chronic obstructive pulmonary disease, asthma, steroid responsive, and meningitis. Dr. Byers does not mention pneumoconiosis. Dr. Green's Discharge Statement agrees with Dr. Byers' consultation report.

J.A. 33. For reasons mentioned in conjunction with the opinions of Endres–Bercher and Fino, the reports of Byers and Green are not supportive of (b)(3) rebuttal. Neither Byers nor Green diagnosed Curry with pneumoconiosis.

6. The Director, OWCP, as federal respondent, now concedes that *Grigg* compels this conclusion. Before the BRB, the Director had contended, with Pocahontas, that the ALJ's (b)(3) rebuttal ruling was substantially supported by these medical opinions. Before us, following *Grigg's* advent in the interval, the Director takes the position that, under *Grigg*, those opinions would not suffice. Fed.Resp.Br. 30.

7. *Hobbs v. Clinchfield Coal Co.*, 45 F.3d 819 (4th Cir.1995), decided after briefs were filed in the instant case, put a twist on *Grigg* that should be noted but does not apply here. In *Hobbs*, which involved a claim processed under Part 718 of the governing regulations, an ALJ had determined, on the basis of medical evidence, that the miner-claimant had a pulmonary impairment—chronic bronchitis—that qualified as one form of "legal pneumoconiosis" and that he was totally disabled, but that the legal pneumoconiosis found to exist was not a contributing cause of the disability. On petition for review of the BRB's decision affirming the ALJ's denial of benefits, the claimant challenged the sufficiency of the medical opinions under the *Massey/Grigg* standard for determining whether pneumoconiosis was a contributing cause of the disability. The contention was that these medical opinions, like those found insufficient in *Grigg*, were demonstrably based

### III

 There remains the issue whether the BRB's decision might yet be affirmed on the alternative basis that, as the ALJ found, the (a)(1) interim presumption had been rebutted under (b)(4)'s provision for rebuttal if "[t]he evidence establishes that the miner does not, or did not, have pneumoconiosis." [8] 20 C.F.R. § 727.203. This presents a threshold question of law whether (b)(4) may *ever* be used to defeat a claim for benefits when the claimant has successfully invoked the (a)(1) interim presumption. Because invocation of the (a)(1) presumption has resulted from proof, by a preponderance of the evidence, that clinical pneumoconiosis *does* exist, it is arguable that in logic and as a matter of orderly procedure, that proven fact (as opposed to presumptions arising from it under (a)(1)) cannot thereafter be "rebutted" by other proof under (b)(4) that pneumoconiosis does *not* exist. The Supreme Court has flatly stated that it cannot be: that "after a Subsection (a)(1) invocation, the question of pneumoconiosis is effectively closed." *Mullins Coal Co. v. Director, OWCP,* 484 U.S. 135, 150–51 n. 26, 108 S.Ct. 427, 435–36 n. 26, 98 L.Ed.2d 450 (1987).

Notwithstanding the logical force of this argument and its seeming acceptance by the

---

on the physicians' belief that the claimant did not have pneumoconiosis, a fact already found to the contrary. The *Hobbs* court distinguished *Grigg* on the basis that in *Hobbs* the challenged medical opinions only revealed a belief that the claimant did not have "coal workers' pneumoconiosis." Because this belief was not necessarily contradictory of the established fact that he had another form that qualified as "legal pneumoconiosis," it did not disqualify the consequent medical opinion that the established form was not even a contributing cause of the disability, as the medical opinions in *Grigg* had been found to be. *See Hobbs,* 45 F.3d at 821–22.

The *Hobbs* twist on *Grigg* cannot apply where, as here, and as in *Grigg,* the existence of pneumoconiosis had been established by x-ray evidence used to invoke the interim presumption under 20 C.F.R. § 727.203(a)(1) and not, as in *Hobbs,* by medical evidence considered under Part 718 that established the existence of another form than clinical, or medical, "coalworkers' pneumoconiosis." In the instant case, as in *Grigg,* the form established was, by definition, medical or clinical pneumoconiosis so that medical opinions premised on a belief that either pneumoconiosis—unspecified or "coalworkers' pneumoconiosis" did not exist are necessarily contradictory of the established fact and so fall within *Grigg's* insufficiency rule.

8. The federal respondent, Director, OWCP, has pointed out two possible procedural barriers to our consideration of this issue, but then argues that neither should preclude our review. Though neither Curry nor Pocahontas has addressed them, we think it prudent to discuss them briefly since at least one might be considered jurisdictional. In the end, we agree with the Director, OWCP, that neither precludes our review.

The first problem is that despite two statements in the BRB's lead opinion that the ALJ's finding of rebuttal under (b)(4) was "vacated," this technically could not be so. Under 20 C.F.R. § 801.301(a), when the BRB sits en banc, "official action ... can be taken only on the concurring vote of at least three permanent members." As indicated in our procedural recitation, three members did not vote affirmatively to "vacate" (nor in a way that commanded vacatur of) the ALJ's (b)(4) rebuttal ruling. On that issue they were, at most (since the "dissenters" did not actually indicate how they would have applied their limited-rebuttal views), evenly divided. Arguably, then, there is no BRB action on this issue to be reviewed on the petition for review. But that is not so. Just as when appellate courts evenly divide on an issue, so when an administrative agency evenly divides in reviewing lower-tier rulings, the even division itself constitutes an affirmance-by-necessity which is then subject to judicial review as an effective affirmance. *See, e.g., George Hyman Constr. Co. v. Occupational Safety and Review Comm'n,* 582 F.2d 834, 836–37 (4th Cir.1978); *Pennsylvania Steel Foundry & Mach. Co. v. Secretary of Labor,* 831 F.2d 1211, 1213–14 (3rd Cir.1987); *Todd Shipyards Corp. v. Black,* 717 F.2d 1280, 1287–88 (9th Cir.1983).

The second problem is that Curry, as the party aggrieved by the ALJ's (b)(4) rebuttal ruling that was left standing by the BRB's even-division affirmance, did not in his brief in this court formally raise the issue. The normal rule of course is that failure to raise an issue for review in the prescribed manner constitutes a waiver. *See, e.g., Caperton v. Beatrice Pocahontas Coal Co.,* 585 F.2d 683, 692 (4th Cir.1978). But the rule is not an absolute one and review may proceed (even completely *sua sponte* ) when the equities require. *See, e.g., Robinson v. Pickands Mather & Co./Leslie Coal Co.,* 914 F.2d 35, 36 n. 3 (4th Cir.1990). Here, generally recognized equities compel our review. Both immediate parties, not just Curry, were understandably confused by the ambiguous BRB order. Pocahontas as well as Curry assumed that the (b)(4) rebuttal ruling had effectively been "vacated." This led Curry, favored by such a ruling, not to raise it as an issue; it led Pocahontas, whom it disfavored, to raise and challenge it as respondent. In consequence, the issue *has* been properly raised, briefed, and argued by Pocahontas who could not therefore be prejudiced by our review.

Supreme Court in *Mullins,* there is an opposing view. Briefly put, it is that the existence of pneumoconiosis as fact "established" by invocation of the (a)(1) presumption may nevertheless under limited circumstances, be subject to "rebuttal" (disproof?) under (b)(4)—the circumstances being that evidence different in kind from and of greater technical accuracy than that used to invoke the presumptions is used to "rebut" it. It was over these opposing views that the four-member BRB divided in this case, with the two "dissenting" members taking the view that (b)(4) rebuttal is not completely precluded, while the other two members thought it was.

Pocahontas, interpreting the confusedly divided BRB decision on this point as having held that (b)(4) rebuttal is always precluded, argues against that view, asserting that the Supreme Court's statement in *Mullins* is dictum that does not preclude at least limited opportunity for (b)(4) rebuttal. And, Pocahontas contends that under that view the medical opinions of Drs. Fino and Endres–Bercher, being different in kind from the x-ray evidence used to invoke the (a)(1) presumptions, were properly considered by the ALJ as sufficient to "rebut" the existence of pneumoconiosis.

The Director, in general agreement with Pocahontas on the first point, argues for a highly sophisticated position of limited opportunity for (b)(4) rebuttal,[9] but then contends, contrary to Pocahontas, that even if that position were accepted, the (b)(4) "rebuttal" evidence relied upon by Pocahontas (and the ALJ) here—the medical opinions of Drs. Fino and Endres–Bercher—did not suffice to "rebut" the proven (and conceded) existence of clinical pneumoconiosis. In the course of

this argument, the Director urges that we take the opportunity to reject the position that (b)(4) may never be used to "rebut" following (a)(1) invocation, and that we adopt the "limited availability" position that office proposes.

We think the "never-or-sometimes" issue should be reserved for another day and a case with less of procedural awkwardness to becloud its resolution. We hold instead, in agreement with the Director, that even if the "sometimes" view were adopted, the (b)(4) rebuttal evidence here would not suffice because of its insubstantiality and its failure to meet any of the suggested limited bases for permitting (b)(4) rebuttal.

Dr. Fino, who did not examine Curry, based his opinion on his review of many of the chest x-rays, blood gas studies, pulmonary function studies, medical reports and hospital records in the administrative record. In the process, he re-read as negative for pneumoconiosis a number of x-rays previously read as positive by others that were considered by the ALJ in finding the (a)(1) presumptions invoked. His ultimate opinion was that asthma, or cigarette smoking, or both, not pneumoconiosis from coal dust exposure, caused whatever lung disease Curry had, and that he in fact had no pulmonary impairment.

Dr. Endres–Bercher did examine Curry in 1989. He also considered an x-ray that had been read negative for pneumoconiosis by a Dr. McClunery, an arterial blood gas study that read normal, and a pulmonary function study that suggested obstructive small airways disease. From all these, he diagnosed chronic bronchitis with no significant pulmonary impairment and opined that Curry did not have pneumoconiosis. He did not opine

9. In rough summary: Even if the *Mullins* statement be considered holding rather than dictum, it does not flatly preclude (b)(4) rebuttal following (a)(1) invocation under any and all circumstances. A complete reading of *Mullins'* analysis of the intended interaction of (a)(1) and (b)(4) reveals that two types of evidence, though rarely available and perhaps not yet even in existence, might permit (b)(4) rebuttal. The first would be evidence based on newly developed and more accurate diagnostic techniques for detecting clinical pneumoconiosis than those which (a)(1) permitted as the *then* best available. The second,

building on the arguable proposition that compensable pneumoconiosis in any of its "legal" forms is, by definition, only those lung diseases which are somehow connected to coal dust exposure, would be evidence which "severed" the condition itself from its cause, and disproved the causative element, i.e. that it was coal-dust related. Fed.Resp.Br. 20–27.

As indicated in text, we express no opinion on the validity of this interpretation of the relevant statutes and regulations and of the implications of the *Mullins* statement.

as to the cause of the chronic bronchitis that he diagnosed.

It is obvious then that both of these physicians based their beliefs that Curry did not have clinical pneumoconiosis on the basis of negative x-ray readings by others or, in Dr. Fino's case, on re-readings as negative of positive readings by others. Their no-pneumoconiosis opinions therefore flatly contradict the ALJ's finding of clinical pneumoconiosis based on the same type of evidence. Neither opinion purports to reject that finding on the basis of later-developed and more accurate diagnostic techniques than those specifically authorized by 20 C.F.R. § 727.203(a)(1) that was used by the ALJ here to find clinical pneumoconiosis by a preponderance of the evidence. Neither does either opinion purport to attribute the ALJ's finding of clinical pneumoconiosis based on positive x-ray readings to some cause other than coal dust exposure, thereby resting their no-pneumoconiosis conclusions on what can be considered a causation-aspect of the disease's definition.

These two physicians' no-pneumoconiosis opinions could not therefore suffice for (b)(4) rebuttal purposes even if the limited (b)(4) rebuttal positions urged by Pocahontas and the Director were adopted. As obviously they could not if, as two members of the BRB would hold, (b)(4) rebuttal is never possible following (a)(1) invocation.

Because (b)(4) rebuttal is therefore unavailable on either view of the matter, the interim presumptions of (a)(1) have not been rebutted by that means, and the ALJ's contrary finding (as affirmed by the evenly-divided BRB decision) must be reversed.[10]

## IV

Having concluded that the presumption of entitlement to award established by Curry's undisputed invocation of (a)(1) has not been rebutted under either (b)(3) or (b)(4), the BRB's decision affirming the ALJ's contrary decision must be reversed. Because entitlement is therefore established on the record before us—only one result being possible— we will remand to the BRB with directions to direct an award of appropriate benefits.

*SO ORDERED.*

LUTTIG, Circuit Judge, dissenting:

The court properly does not decide whether an interim presumption under 20 C.F.R. § 727.203(a)(1) can be rebutted under 20 C.F.R. § 727.203(b)(4), "reserv[ing] [that issue] for another day and a case with less of procedural awkwardness to becloud its resolution." *Ante* at 523. The court does attempt, though, to dictate the resolution of this issue through *dicta* which, in my view, misstates the Supreme Court's opinion in *Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987). Specifically, the majority asserts that "[t]he Supreme Court has flatly stated that it cannot be: that 'after a Subsection (a)(1) invocation, the question of pneumoconiosis is effectively closed.'" *Ante* at 522–23 (quoting *Mullins*, 484 U.S. at 150 n. 26, 108 S.Ct. at 435–36 n. 26). It is clear, however, that the Supreme Court did not foreclose in *Mullins* the possibility of a subsection (b)(4) rebuttal of an interim presumption of pneumoconiosis under subsection (a)(1). The Court did not even have before it this issue. The issue in *Mullins* concerned the burden of proof that a claimant must meet to invoke an interim presumption of eligibility for benefits under 20 C.F.R. § 727.203(a). The Court held only that a claimant must establish one of the five qualifying facts by a preponderance of the evidence in order to invoke an interim presumption of eligibility under subsection 203(a). *See Mullins*, 484 U.S. at 138, 159–61, 108 S.Ct. at 429, 440–41.

---

10. In reversing this ruling (the affirmance of necessity by even-division) we observe, *sua sponte*, that we do not violate the rule of *Securities & Exchange Comm'n v. Chenery Corp.*, 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943), that "the grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." Notwithstanding that the ruling here being reviewed was one whose legal effect—affirmance—was forced by necessity rather than by official action, the "grounds" upon which it was "based"—the sufficiency of evidence to establish (b)(4) rebuttal—are exactly the grounds upon which we have "judged" it.

*Compare Grigg v. Director, OWCP,* 28 F.3d 416, 419 (4th Cir.1994).

The passage from *Mullins* into which the majority reads a "flat statement" by the Court that subsection (b)(4) rebuttals are "effectively closed" whenever the claimant successfully invokes a subsection (a)(1) presumption was not even a statement by the Court of its view of the regulation, but was rather the Court quoting the position of the Secretary of Labor. In the passage, the Court first describes the Secretary's position and then quotes the government's brief as follows: " 'after a Subsection (a)(1) invocation, the question of pneumoconiosis is effectively closed: the rebutting party cannot, as a practical matter, attempt to show that the miner does not suffer from some form of clinical pneumoconiosis.' " *Mullins,* 484 U.S. at 150 n. 26, 108 S.Ct. at 435–36 n. 26 (quoting Br. for Fed.Resp. at 24, n. 22). The Court expressly stated three times in the single footnote that it was only stating the Secretary's position in the litigation, presumably so as not to be misunderstood as having placed its imprimatur on the Secretary's view.

Of course, the mere quotation of the Secretary's view is not tantamount to the embrace of that view. Even if it were, the Court at most could be understood as having said that it is not "practical" to rebut a subsection (a)(1) presumption under subsection (b)(4), not that such a rebuttal is unavailable as a matter of law.

Thus, when the occasion does arise to address the applicability of a (b)(4) rebuttal following the establishment of an (a)(1) interim presumption, our court will write on a clean slate, bound by neither *Mullins* nor by today's *dicta* that such rebuttal is not available.

On the merits of the issue that the court does properly have before it, I would affirm the ALJ's finding that Beatrice Pocahontas rebutted the interim presumption by showing that Curry's disability "did not arise in whole or in part out of coal mine employment." 20 C.F.R. § 727.203(b)(3). Both the ALJ and all four members of the *en banc* Benefits Review Board agreed that the (a)(1) presumption had been rebutted under subsection (b)(3). This determination is, without any reasonable question, clearly supported by substantial evidence.

First, Dr. Endres–Bercher, who examined Curry and performed numerous tests on him, concluded that "[o]bjective testing ... does not demonstrate any significant pulmonary impairment" and that Curry "does not have any pulmonary disability." J.A. at 407. Dr. Endres–Bercher further explained that any impairment he did detect was attributable to Curry's history of chronic bronchitis and multiple episodes of pneumonia. Thus, Dr. Endres–Bercher conclusively determined that there was no pulmonary impairment and that to the extent that there was any pulmonary impairment, it was unrelated to Curry's coal mine employment. *See id.*

The majority dismisses Dr. Endres–Bercher's testimony as not creditable under *Grigg,* which holds that medical opinions of no impairment premised on a finding that the claimant does not suffer from pneumoconiosis "are not worthy of much, if any, weight" when used to rebut an (a)(1) interim presumption of pneumoconiosis. *Grigg,* 28 F.3d at 419. The disregard of this testimony is error in two respects. First, *Grigg* does not prohibit consideration of opinions premised on the belief that a claimant does not suffer from pneumoconiosis; it merely directs that such testimony must be discounted. Second, Dr. Endres–Bercher never stated "that Curry did not have pneumoconiosis." *Ante* at 521. Rather, Dr. Endres–Bercher concluded that "[i]f a disease process such as pneumoconiosis were present *to any significant degree* there would be diminution of the total lung capacity as well as the lung subdivisions." J.A. at 406 (emphasis added). An opinion that pneumoconiosis is not present "to any significant degree" is *not* an opinion "premised ... on an erroneous finding that the claimant does not suffer from pneumoconiosis." *Grigg,* 28 F.3d at 419. Thus, the ALJ could, consistent with *Grigg,* fully credit Dr. Endres–Bercher's testimony.

The ALJ's finding is also supported by the testimony of Dr. Fino, who opined that "[f]rom a functional standpoint, [Curry] is not disabled." J.A. at 381. While Dr. Fino

acknowledged that Curry had symptoms of coughing and mucus production, he explained that "disability can only be determined by valid lung function studies. In this case, his lung function is normal." *Id.* Again, the majority dismisses this testimony assertedly because it "was premised on [Dr. Fino's] belief that Curry did not have pneumoconiosis." *Ante* at 521. Again, however, Dr. Fino never made such a statement. Rather, Dr. Fino reported his belief that Curry's medical history is not consistent with "*[s]imple coal workers'* pneumoconiosis," expressly concluding that "[s]imple coal workers' pneumoconiosis has not caused any disability and has not contributed at all to a disability should one be found." J.A. at 380, 381 (emphasis added).

In *Dehue Coal Co. v. Ballard*, 65 F.3d 1189, 1193 (4th Cir.1995), we explained that a "physician's finding that the miner does not have coal workers' pneumoconiosis is not necessarily inconsistent with an ALJ's decision that the miner suffers from pneumoconiosis as it is defined in 20 C.F.R. § 718.201. Both conclusions may be accurate because 'the legal definition of pneumoconiosis contained in § 718.201 is significantly broader than the medical definition of coal workers' pneumoconiosis.'" *Id.* at 1193 (quoting *Hobbs v. Clinchfield Coal Co.*, 45 F.3d 819, 821 (4th Cir.1995)).* In other words, a determination that a claimant does not have "coal worker's pneumoconiosis" does not contradict or in any way undermine the interim presumption that the miner is "presumed to be totally disable due to pneumoconiosis." 20 C.F.R § 727.203(a). Thus, the majority's assertion that the *Hobbs* "twist" on *Grigg* is inapplicable where the existence of pneumoconiosis is established by x-rays used to invoke the interim presumption under 20 C.F.R. § 727.203(a)(1) is simply incorrect. *See ante* at 521 n. 7. The ALJ could, consistent with *Grigg*, fully credit Dr. Fino's testimony, finding it, as he did, to be "well reasoned." J.A. at 33, 34.

Finally, the majority rejects the testimony of Dr. Abernathy, and in part the testimony of Drs. Endres–Bercher and Fino, on the grounds that none of the doctors opined "that [Curry] suffer[ed] *no* respiratory or pulmonary impairment of any kind." ·*See ante* at 521. The majority's rejection of this testimony is likewise in error. Neither *Grigg* nor any other interpretation of subsection (b)(3) requires a medical opinion to find "no respiratory or pulmonary impairment" in order successfully to rebut the subsection (a)(1) presumption under subsection (b)(3). *Grigg* merely addresses one method of (b)(3) rebuttal—where the claimant has no respiratory or pulmonary impairment. As we noted in *Toler v. Eastern Associated Coal Co.*, 43 F.3d 109, 115 (4th Cir.1995), *Grigg* holds that "a medical opinion that a claimant does not have a respiratory or pulmonary impairment cannot rebut the interim presumption, raised by a chest x-ray showing pneumoconiosis, ... where the physician premised his opinion on a determination that the claimant does not have pneumoconiosis." It is quite obvious that an employer can "establish[ ] that the total disability ... did not arise in whole or in part out of coal mine employment," 20 C.F.R. § 727.203(b)(3), while at the same time acknowledging that the claimant has some sort of respiratory or pulmonary impairment unrelated to a claimant's coal mine employment. Dr. Abernathy offered just such an opinion, concluding that the "degree of retention of coal dust, however, is not extensive and apparently does not account for [Curry's] shortness of breath or his wheezing." J.A. at 433.

Because the ALJ's determination that Curry's "total disability ... did not arise in whole or in part out of coal mine employ-

---

* The definition of "pneumoconiosis" applicable in *Dehue Coal Co.*, 20 C.F.R. § 718.201, is the same as the one at issue in this case, 20 C.F.R. § 727.202. Both subsections provide:

> For the purposes of the Act, *pneumoconiosis* means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. This definition *includes, but is not limited to, coal workers' pneumoconiosis,* anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, progressive massive fibrosis, silicosis, or silicotuberculosis, arising out of coal mine employment.
> 20 C.F.R. §§ 718.201, 727.202 (second emphasis added).

ment" is supported by substantial evidence, I would affirm the denial of benefits.