**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

SEWELL COAL COMPANY,
                    *Petitioner,*

v.

GILMER O'DELL; DIRECTOR,
OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,
                    *Respondents.*

No. 00-2253

On Petition for Review of an Order of the
Benefits Review Board.
(99-285-BLA)

Argued: June 6, 2001

Decided: July 26, 2001

Before WILKINSON, Chief Judge, TRAXLER, Circuit Judge, and
Andre M. DAVIS, United States District Judge for the
District of Maryland, sitting by designation.

___

Affirmed by unpublished per curiam opinion.

___

## COUNSEL

**ARGUED:** Douglas Allan Smoot, JACKSON & KELLY, P.L.L.C.,
Morgantown, West Virginia, for Petitioner. Roger Dale Forman,
FORMAN & CRANE, L.C., Charleston, West Virginia, for Respon-
dent O'Dell; Michelle Seyman Gerdano, Office of the Solicitor,

UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director. **ON BRIEF:** Kathy L. Snyder, JACKSON & KELLY, P.L.L.C., Morgantown, West Virginia, for Petitioner. Henry L. Solano, Solicitor of Labor, Donald S. Shire, Associate Solicitor for Black Lung Benefits, Patricia M. Nece, Counsel for Appellate Litigation, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Sewell Coal Company ("Sewell") appeals the decision of the Benefits Review Board ("Board") affirming an administrative law judge's ("ALJ") decision to award black lung benefits to Gilmer O'Dell ("O'Dell"), a former coal miner, pursuant to the Black Lung Benefits Act ("the Act") as amended, 30 U.S.C. §§ 901-945. We affirm.

### I.

O'Dell worked as a West Virginia coal miner for approximately 35 years. For the last 25 of those years, he was employed by Sewell. During the last four or five years of his employment with Sewell, O'Dell worked as a car trimmer, a job requiring hard manual labor and significant exposure to dust. Thereafter, O'Dell began experiencing respiratory problems, dizziness and severe pain in the inner ear. He retired on November 27, 1979. During his career as a coal miner, O'Dell smoked about one pack of cigarettes per day.

On December 12, 1979, O'Dell filed an application for federal black lung benefits pursuant to the Act. The Office of Workers' Compensation Programs in the U.S. Department of Labor ("OWCP") iden-

tified Sewell as the responsible coal mine operator for any benefits due, and issued a notice of initial finding on October 8, 1980, advising Sewell of its right to contest the claim by filing a controversion within 30 days. Sewell did not file its controversion until November 25, 1980, about 18 days after the deadline. The controversion, accompanied by a letter from Sewell's counsel explaining the delay, was ultimately accepted. The Director of OWCP ("the Director") thereafter considered evidence submitted by both parties and sustained O'Dell's claim. Sewell disputed the award and requested a hearing before the Office of Administrative Law Judges. A hearing was eventually conducted and, on November 30, 1989, ALJ Feldman issued an award of benefits.

In the ensuing 11 years, Sewell appealed four times to the Board. Each time, the Board affirmed in part, vacated in part, and remanded for further consideration and each time, on remand, ALJ Feldman— and later ALJ Levin (after ALJ Feldman retired)—again awarded benefits. Finally, on July 31, 2000, the Board affirmed the award. Sewell, the petitioner, filed a timely appeal. We have jurisdiction pursuant to § 21(c) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 921(c), incorporated by reference in § 422(a) of the Black Lung Benefits Act, 30 U.S.C. § 932(a). Respondents are O'Dell, the claimant, and the Director, a party-in-interest.

## II.

Prolonged exposure to coal dust has subjected hundreds of thousands of coal miners to pneumoconiosis—a serious and progressive pulmonary condition popularly known as "black lung." *Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 138 (1987). The tragic consequences of this crippling illness prompted Congress to enact Title IV of the Federal Coal Mine Health and Safety of Act of 1969, a precursor to the Black Lung Benefits Act and its amendments ("the Act"). These statutes, along with the regulations promulgated thereunder, collectively prescribe the federal benefits program for black lung victims. *Id.*

Part C of this program, 30 U.S.C. §§ 931 *et seq.*, governs claims filed on or after July 1, 1973. Such claims are paid by private employers or by a fund to which the employers contribute. *Id.* at 139. Under

Part C of the program, claims filed before and after April 1, 1980, are treated differently. Claims filed before April 1, 1980, such as the claim in the instant case, are governed by "interim regulations," 20 C.F.R. § 727, while claims filed after that date are governed by "permanent criteria," 20 C.F.R. §§ 718, 725.4(a). *Id.*

Under the interim regulations, claimants who have engaged in coal mine employment for at least 10 years are presumed eligible for black lung benefits if one of the following medical requirements is met: (1) a chest x-ray establishes the presence of pneumoconiosis; (2) ventilatory studies establish the presence of a respiratory or pulmonary disease—not necessarily pneumoconiosis—of a specified severity; (3) blood gas studies demonstrate the presence of an impairment in the transfer of oxygen from the lungs to the blood; or (4) other medical evidence, including the documented opinion of a physician exercising reasonable medical judgment, establishes the presence of a totally disabling respiratory impairment. 20 C.F.R. § 727.203(a); *Mullins Coal Co.*, 484 U.S. at 141-42.

Once a presumption of entitlement is established under the interim regulations, the burden of proof shifts to the employer. A presumption is rebutted if the employer proves one of the following: (1) the claimant is, in fact, doing his usual or comparable work; (2) the claimant is capable of doing his usual or comparable work; (3) total disability did not arise in whole or in part out of coal mine employment; or (4) the claimant does not have pneumoconiosis. 20 C.F.R. § 727.203(b); *Mullins Coal Co.*, 484 U.S. at 143-44.

### III.

Between 1980 and 1989, O'Dell underwent a series of medical examinations. This appeal revolves around the interpretations of 15 chest x-rays and the assessments of six physicians. The central issue is whether Sewell has successfully rebutted the interim presumption of entitlement by proving that O'Dell does not have pneumoconiosis. A brief summary of each doctor's assessment follows:

1. *Dr. Eakle*: Dr. Eakle is O'Dell's treating physician. He examined O'Dell on August 5, 1980 and noted a history of pleurisy, wheezing, arthritis, and heart disease. He diagnosed pneumoconiosis, Category

q, emphysematous bullae, and kerley b lines. His diagnosis was based on a positive chest x-ray.

2. *Dr. Zaldivar*: Dr. Zaldivar is a board-certified pulmonologist and B-reader.[1] He examined O'Dell on February 20, 1981, and noted that he resigned after 31 years of coal mine employment in consequence of an inner ear disturbance that caused dizziness. Dr. Zaldivar found a mild obstructive and restrictive airway impairment, which he attributed to exposure to coal mine dust. He found that there was radiographic evidence of simple coal workers' pneumoconiosis (i.e., "clinical pneumoconiosis").

3. *Dr. Crisalli*: Dr. Crisalli is board-certified in internal medicine with a sub-specialty of pulmonary disease. He examined O'Dell on November 11, 1988, and diagnosed simple coal workers' pneumoconiosis, based on positive x-ray findings, and hypertension. Dr. Crisalli concluded that O'Dell had a five percent pulmonary functional impairment, and that he could return to his usual coal mine work or comparable employment. In a supplemental report dated March 10, 1989, Dr. Crisalli noted that he was unable to state whether O'Dell is disabled by inner ear problems with associated dizziness.

4. *Dr. Kress*: Dr. Kress, a B-reader, has limited his practice to the diagnosis and treatment of pulmonary diseases. Dr. Kress reviewed O'Dell's medical records and issued a consultative report dated February 23, 1989. He concluded that the x-ray evidence was inconclusive for the existence of coal workers' pneumoconiosis. He diagnosed pulmonary emphysema attributable to cigarette smoking. He did not believe that this condition was sufficient to prevent O'Dell from returning to coal mine employment.

5. *Dr. Fino*: Dr. Fino is a B-reader and is board-certified in internal medicine with a sub-specialty of pulmonary disease. Dr. Fino

---

[1]"A 'B' reader is a doctor who has demonstrated proficiency in interpreting x-rays for the presence or absence of pneumoconiosis by passing an examination given by the Appalachian Laboratory for Occupational Safety and Health." *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 440 n.1 (4th Cir. 1997) (citing 42 C.F.R. § 37.51(b)(2); 20 C.F.R. § 718.202(a)(ii)(E)).

reviewed O'Dell's medical records and issued a consultative report dated February 26, 1989. He interpreted two x-rays, taken on July 22, 1980, and November 11, 1988, as negative for clinical pneumoconiosis. He also noted that varied levels of arterial blood oxygen between 1980 and 1988 and a normal lung volume study were inconsistent with pneumoconiosis. Dr. Fino concluded that O'Dell suffers a mild pulmonary impairment, but he would not attribute the condition to cigarette smoking.

6. *Dr. Lee*: Dr. Lee examined O'Dell on March 10, 1989. He diagnosed coal workers' pneumoconiosis (by x-ray), bilateral deafness, and essential hypertension. He also noted that O'Dell suffers from progressive dyspnea. He concluded that O'Dell should not return to work in the coal mines because, he believed, further exposure to coal dust would aggravate his pulmonary condition.

IV.

This case came before an ALJ on four separate occasions and on each occasion, the ALJ awarded benefits. The final remand was heard by ALJ Levin, who concluded that O'Dell was entitled to benefits essentially because the x-ray evidence was sufficient to establish the presence of pneumoconiosis, thereby invoking the presumption of entitlement under 20 C.F.R. § 727.203(a)(1) ("(a)(1) presumption"). In doing so, he accorded significant weight to the fact that three of Sewell's own medical experts read O'Dell's x-rays as positive for pneumoconiosis. ALJ Levin further concluded (erroneously, as we note in Part VI below) that invocation of the presumption precluded rebuttal evidence that O'Dell does not have pneumoconiosis under 20 C.F.R. § 727.203(b)(4) ("(b)(4) rebuttal"). ALJ Levin also provided alternative findings. Thus, he found that a presumption of entitlement could also be invoked under 20 C.F.R. § 727.203(a)(2) ("(a)(2) presumption") based upon O'Dell's ventilatory studies. In such an instance, the ALJ concluded, consideration of (b)(4) rebuttal evidence would not be precluded. Accordingly, the ALJ proceeded to consider the radiographic evidence; he rejected it, however, as insufficient to prove the absence of clinical pneumoconiosis. He noted that the x-rays were evenly balanced and therefore inconclusive. The ALJ next considered the medical opinion evidence. He concluded that without the support of the x-ray evidence, the opinions of Drs. Eakle, Zaldi-

var, Crisalli and Lee, all of whom relied heavily on the x-rays in reaching their conclusions, were inconclusive. However, he found the medical opinions of Drs. Kress and Fino, the only two doctors to diagnose O'Dell negatively for clinical pneumoconiosis, sufficient to constitute (b)(4) rebuttal. Specifically, the ALJ concluded that the factors relied upon by those doctors were "more comprehensive and persuasive" than the factors relied upon by the others; therefore, he concluded, Sewell could successfully rebut the interim presumption of entitlement.

On appeal, the Board affirmed the award of benefits, concluding that O'Dell had established a presumption of entitlement under both (a)(1) and (a)(2), and that (b)(4) rebuttal evidence was precluded in respect to the (a)(1) presumption finding. Accordingly, the Board did not address the ALJ's alternative findings regarding the sufficiency of Sewell's (b)(4) rebuttal evidence.

## V.

In reviewing the determinations of the Board, this Court undertakes an independent review of the record to determine whether the ALJ's factual findings were based upon substantial evidence. *Dehue Coal Co. v. Ballard*, 65 F.3d 1189, 1193 (4th Cir. 1995). Legal conclusions, of course, are reviewed *de novo*. *Id.* The issues discussed herein present questions of law.

## VI.

Sewell does not challenge the ALJ's invocation (and the Board's affirmance) of the (a)(2) presumption of entitlement.[2] Moreover, the Director concedes that the ALJ and the Board erred in concluding that consideration of (b)(4) rebuttal was precluded in respect to the (a)(1) presumption. Therefore, the only issue as to the merits to be decided on this appeal is whether the medical evidence of record is legally sufficient to support (b)(4) rebuttal of the (a)(2) presumption as the

---

[2]Nor does Sewell challenge earlier findings that it has failed to establish rebuttal pursuant to 20 C.F.R. § 727.203(b)(2) and (b)(3). Rebuttal pursuant to 20 C.F.R. § 727.203(b)(1) is, of course, unavailable since O'Dell is not currently doing his usual or comparable work.

ALJ found, a finding which the Board did not review. We hold that the ALJ's finding is not supported by legally sufficient evidence. Before explaining our holding, we briefly address two preliminary procedural issues.

A.

At oral argument, counsel urged us to consider, as a threshold matter, a jurisdictional issue raised by O'Dell in his reply brief. According to O'Dell, we should affirm the award of benefits on the ground that, because Sewell filed a late controversion, the ALJ lacked jurisdiction from the outset to hear the claim. O'Dell further suggested that the agency's decisional delay in handling this case constituted a violation of his due process rights and that justice requires, at a minimum, that liability for the payment of his benefits be transferred to the Black Lung Disability Trust Fund ("Trust Fund").[3] Sewell, of course, agrees with this latter contention, and seems to argue that its due process rights have also been violated. We are not persuaded.

Regulations promulgated under the Act provide that "[w]ithin 30 days after receipt of . . . [the notice of initial finding], unless such period is extended by the deputy commissioner for good cause shown, or in the interest of justice, a notified operator shall indicate an intent to accept or contest liability." 20 C.F.R. § 725.413(a). The regulations further state that failure to respond within the specified time period shall be deemed an acceptance of the initial findings and a waiver of the right to contest the claim "unless the operator's failure to respond is excused for good cause shown." *Id.* § 725.413(b)(3).

The OWCP issued its notice of initial finding in the instant case on October 8, 1980. Sewell did not respond until November 25, 1980, about 18 days after the deadline. In the letter of transmittal, counsel

---

[3]The Trust Fund is a separate fund within the general treasury, whose trustees are the Secretaries of Treasury, Labor, and Health and Human Services. It is funded primarily by the receipts of an excise tax imposed on coal producers and may make expenditures only for purposes related to the Act, including benefits on claims where no responsible operator can be identified and the administrative expenses of the program. 26 U.S.C. § 9501(d).

for Sewell wrote: "As we discussed, due to an oversight in this office, the claim file was not forwarded to the employer's legal counsel so that a controversion could be filed. We respectfully request that this late controversion be accepted." (Supp. J.A. 4.)

O'Dell did not move to dismiss Sewell's controversion until 1989 (apparently when he retained counsel), nine years after it was filed. The ALJ concluded that the Deputy Commissioner's acceptance of the untimely filing did not constitute an abuse of discretion. O'Dell challenges that conclusion for the first time in eleven years on this appeal. However, he has failed to provide any reason why we should now upset the ALJ's conclusion that there was "good cause" for the belated filing. Nor does our own review of the record indicate that an abuse of discretion inhered in the acceptance of Sewell's late controversion. Accordingly, we find that the ALJ had jurisdiction to hear O'Dell's claim.[4]

## B.

Sewell contends that O'Dell waived his right to challenge the

---

[4]Because neither party raised the issue until now, we need not address the ostensible due process question. *Cf. Rana v. United States*, 812 F.2d 887, 890 (4th Cir. 1987) ("When an argument concerns procedural rights within the purview of agency expertise, and a plaintiff fails to raise the argument before the agency, courts will entertain the argument on appeal only if it is 'jurisdictional' or if there are compelling reasons for its novelty."). We nevertheless point out that because we are affirming the Board's award of benefits, any claim of prejudice by O'Dell is moot. We also note that, while we find the 21 year delay disturbing, Sewell has failed to demonstrate any harm resulting from the delay. This is not a case in which delay precluded the employer from attempting to mount a defense, *Lane Hollow Coal C. v. Director, OWCP*, 137 F.3d 799, 807 (4th Cir. 1998), or one where the agency has lost the official file and failed to inform counsel of scheduled hearings, *Island Creek Coal Co. v. Holdman*, 202 F.3d 873, 883 (6th Cir. 2000). Rather, Sewell asserts that the parties were prejudiced by changes in the law that occurred during the pendency of the procceding. Of course, relevant legal standards not infrequently evolve throughout the life of a case. Manifestly, such changes do not constitute the sort of "prejudice" which might be thought to deprive a party of due process of law.

ALJ's alternative findings regarding the legal sufficiency of (b)(4) rebuttal because he did not file a cross-appeal on that issue with the Board. We disagree. The regulations governing review of a final order or decision issued by an ALJ provide that "[a]rguments in response briefs shall be limited to those which respond to arguments raised in petitioner's brief and to those in support of the decision below." 20 C.F.R. § 802.212(b). Moreover, "[w]hen a decision or order is favorable to a party (i.e., the prevailing party), the prevailing party *may* file a cross-appeal . . . to challenge any adverse findings of fact or conclusions of law in the same proceeding." *Id.* § 802.201(a)(2) (emphasis added). We have interpreted these regulations to mean that "the argument made without cross-appeal must be in support of '*the decision*' of the ALJ, but not necessarily in support the ALJ's *reasoning in reaching his decision*." *Malcomb v. Island Creek Coal Co.*, 15 F.3d 364, 369 (4th Cir. 1994) (emphasis in original).

In *Malcomb*, the ALJ denied a claim for benefits under 20 C.F.R. § 727.203(a), finding that the employer had successfully rebutted the presumption of entitlement under 20 C.F.R. § 727.203(b)(3). The ALJ awarded benefits, however, pursuant to 20 C.F.R. § 410.490. The employer appealed this decision to the Board; the claimant did not file a cross-appeal challenging the ALJ's rebuttal holding. *Id.* at 366. While the appeal was pending, the Supreme Court decided a case that mandated a finding that the claimant was *not* entitled to benefits under 20 C.F.R. § 410.490. The claimant agreed that the intervening decision precluded his award under that section, but argued that the ALJ's decision should be affirmed under 20 C.F.R. § 727.203(a) because the ALJ had erred in finding that there was sufficient evidence to support rebuttal. The Board refused to consider the claimant's argument on the ground that he had failed to file a cross-appeal. *Id.* at 366-67. We reversed, concluding that:

> [U]nder the Board's cross-appeal regulations, an appellee need not cross-appeal in order to make an argument that supports the decision—or, stated differently, the result—reached by the ALJ, but attacks the reasoning used by the ALJ in reaching his decision.
>
> By arguing that the ALJ erred in rejecting his claim for benefits under section 727.203, Malcomb sought to support

the result reached by the ALJ—awarding him benefits. As a result, the Board's cross-appeal regulations did not require Malcomb to cross-appeal in order to press this argument, and the Board erred in not considering it on the ground that he failed to do so.

*Id.* at 370.

The instant case is analogous to *Malcomb*. O'Dell seeks to support the *result* reached by the ALJ. As in *Malcomb*, that result is the award of benefits, not the reasoning of the ALJ or the details of his resolution of every subsidiary issue along the way. Accordingly, we are satisfied that O'Dell did not waive his right to challenge ALJ Levin's alternative findings by failing to file a cross-appeal with the Board. The fact that the Board affirmed the award of benefits without considering the ALJ's alternative findings is irrelevant, since Respondents have now properly raised the issue for review "in the prescribed manner." *Curry v. Beatrice Pocahontas Coal Co.*, 67 F.3d 517, 522 n.8 (4th Cir. 1995). Moreover, under the Federal Rules of Appellate Procedure, Sewell has been afforded an opportunity to reply to the arguments contained in Respondents' briefs. *See* Fed. R. App. P. 28(c). We are satisfied therefore that our review of the ALJ's conclusion as to (b)(4) rebuttal is proper.

## C.

We now turn to the merits. In order to establish (b)(4) rebuttal of an interim presumption of entitlement, an employer must prove that the claimant does not have pneumoconiosis within the meaning of the Act ("legal pneumoconiosis"). 20 C.F.R. § 727.203(b)(4). The Act broadly defines pneumoconiosis as a "chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b).[5] We have recognized that:

---

[5]The regulations promulgated under the Act further define pneumoconiosis as:

[A] chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine

"clinical" or "medical" pneumoconiosis must be distinguished from "legal" pneumoconiosis. Medical pneumoconiosis is "the lung disease caused by the fibrotic reaction of the lung tissue to inhaled dust . . . ." Legal pneumoconiosis, however, is much broader and "refers to all lung diseases which meet the statutory or regulatory definition of being any lung disease which is significantly related to, or substantially aggravated by, dust exposure in coal mine employment."

*Doris Coal Co. v. Director, OWCP*, 938 F.2d 492, 495 (4th Cir. 1991) (citations omitted). In order to establish (b)(4) rebuttal, therefore, Sewell must prove that O'Dell does not have "any lung disease which is significantly related to, or substantially aggravated by, dust exposure in coal mine employment." *Id.; see also Island Creek Coal Co. v. Compton*, 211 F.3d 203, 210 (4th Cir. 2000) ("Critically, 'a medical diagnosis finding of no coal workers' pneumoconiosis is not equivalent to a legal finding of no pneumoconiosis.'" (citation omitted)).

The ALJ erred in finding that Sewell "has rebutted the presumption, triggered pursuant to section 727.203(a)(2), under Section 727.203(b)(4) by showing that claimant does not have clinical or statutory [i.e. legal] pneumoconiosis as defined in 20 C.F.R. 972.202." (J.A. 178.) In making this finding, he relied exclusively on the medical opinions of Drs. Kress and Fino. Neither Dr. Kress nor Dr. Fino, however, performed a physical examination of O'Dell. Rather, each reviewed the chest x-rays and medical records prepared by the four examining physicians, Drs. Eakle, Zaldivar, Crisalli and Lee, all of

---

employment. This definition includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, progressive massive fibrosis, silicosis or silicotuberculosis, arising out of coal mine employment. For purposes of this definition, a disease "arising out of coal mine employment" includes any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment.

20 C.F.R. § 718.201.

whom diagnosed clinical pneumoconiosis.[6] As discussed herein, the medical opinions of Drs. Kress and Fino are insufficient as a matter of law to establish (b)(4) rebuttal of the (a)(2) presumption.

1.

Dr. Kress observed that O'Dell has pulmonary emphysema with evidence of some obstructive lung disease. He found it difficult to determine whether O'Dell also suffered from chronic bronchitis, but concluded that O'Dell's "pulmonary impairment . . . is from his cigarette smoking history certainly not related either to pneumoconiosis if indeed he should subsequently prove, by tissue examination, to have such, nor to his now remote dust exposure." (J.A. 50.) We have repeatedly held, however, that a non-examining physician's opinion on matters not addressed by examining physicians is insufficient as a matter of law to rebut an interim presumption. *Bethlehem Mines Corp. v. Massey*, 736 F.2d 120, 125 (4th Cir. 1984); *Turner v. Director, OWCP*, 927 F.2d 778, 779-80 (4th Cir. 1991); *Malcomb v. Island Creek Coal Co.*, 15 F.3d 364, 370-71 (4th Cir. 1994). Sewell argues that because each of O'Dell's examining physicians "documented an extensive smoking history," (Pet'r Reply Br. at 7), Dr. Kress' diagnosis of pulmonary emphysema attributable to cigarette smoking was proper. Sewell's argument is without merit.

The official government-issued OWCP form used to record medical history and examination for coal mine worker's pneumoconiosis specifically asks for information regarding the examinee's smoking history. Moreover, we would expect any competent physician exam-

---

[6]As explained above, the ALJ discounted the opinions of each of these doctors because they relied heavily on the x-ray evidence, which he found was inconclusive. The Act, however, requires consideration of "all relevant evidence." 30 U.S.C. § 923(b). As we have recently held, the plain meaning of § 923(b) "is that all relevant evidence is to be considered *together* rather than merely within discrete subsections of [the regulations setting forth acceptable methods of proof]." *Island Creek Coal Co. v. Compton*, 211 F.3d 203, 208 (4th Cir. 2000) (emphasis added). We have also held that the opinions of examining physicians, although not necessarily dispositive, deserve especial consideration. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 440 (4th Cir. 1997).

ining a patient with respiratory problems to ask whether the patient smoked. Therefore, the mere documentation of a smoking history on the official OWCP form or elsewhere, without more, cannot reasonably imply that an examining physician has "addressed the possibility that cigarette smoking caused the claimant's disability." *Malcomb*, 15 F.3d at 371. Indeed, if this were the case, then any non-examining doctor could review the medical records of a coal miner with a smoking history and opine that his pulmonary impairment was caused by cigarette smoking. No other physician in the instant case, examining or non-examining, considered smoking to be the etiology of O'Dell's illness. Tellingly, even Dr. Fino, Sewell's other rebuttal witness, specifically states that based on his review of the medical record, he would not attribute O'Dell's pulmonary condition to cigarette smoking.

More importantly, Dr. Kress recognized that O'Dell suffers from some sort of pulmonary impairment, but he did not rule out exposure to coal dust as an *aggravating factor*. In fact, Dr. Kress acknowledged that a diagnosis of pulmonary emphysema may be consistent with certain kinds of pneumoconiosis and other, related lung diseases. He explained:

> Emphysema is an irreversible condition, in fact tends to be progressive. Except those individuals with far advanced pneumoconiosis such as progressive, massive, fibrosis, one does not see physiological emphysema developing in coal workers' pneumoconiosis. True, there is a form of emphysema known as focal emphysema associated with the individual coal macules, but this type of emphysema does not alter function. In the absence of advanced pneumoconiosis and inherited alpha 1 antitrypsin deficiency, cystic fibrosis or advanced bronchiectasis, emphysema develops only as a result of cigarette smoking.

(J.A. 50.) Because Dr. Kress's opinion regarding the cause of O'Dell's pulmonary impairment is based on matters not addressed by the examining physicians, and because it fails to completely rule out legal pneumoconiosis, the ALJ erred in relying on it to support his alternative finding that Sewell had established (b)(4) rebuttal.

2.

Dr. Fino's opinion concludes that "there is insufficient objective medical evidence to justify a diagnosis of simple coal workers' pneumoconiosis (i.e., clinical pneumoconiosis)." (J.A. 57.) The ALJ acknowledged that Dr. Fino relied heavily on the x-ray evidence in forming his opinion. Indeed, Dr. Fino began his discussion by reporting:

> From a radiographic standpoint, my review of the chest x-ray showed it to be completely negative. I found no abnormalities consistent with a simple coal workers' pneumoconiosis. Three B-reader/radiologists agreed with my interpretation. Hence, from a radiographic standpoint, I do not believe that this man has simple coal workers' pneumoconiosis. There was no evidence on the chest x-ray that he had any rounded densities consistent with coal workers' pneumoconiosis.

(J.A. 55.) We have recently reemphasized, however, that "[e]vidence that does not establish medical pneumoconiosis, *e.g.*, an x-ray read as negative for coal workers' pneumoconiosis, should not necessarily be treated as evidence weighing *against* a finding of legal pneumoconiosis." *Island Creek Coal Co. v. Compton*, 211 F.3d 203, 210 (4th Cir. 2000) (emphasis in original).

Dr. Fino also concluded that "[t]here is a mild impairment in respiratory function present." (J.A. 57.) He specifically states that this "mild impairment" is *not* attributable to cigarette smoking. He does not draw a conclusion as to whether the condition is "significantly related to, or substantially aggravated by, dust exposure in coal mine employment," 20 C.F.R. § 718.201, as required under the Act. Accordingly, Dr. Fino's opinion is insufficient to rebut the interim presumption, and the ALJ's heavy reliance on it to justify the finding that Sewell had established (b)(4) rebuttal was erroneous.

VII.

For the foregoing reasons, the Board's award of benefits to O'Dell is

*AFFIRMED*.