UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

WILLIAM AUSTIN,
Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS'

COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR;
CLINCHFIELD COAL COMPANY,
Respondents.

No. 94-1957

On Petition for Review of an Order
of the Benefits Review Board.
(93-976-BLA)

Argued: April 7, 1995

Decided: May 5, 1997

Before WIDENER and LUTTIG, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Petition granted. Vacated and remanded by unpublished opinion.
Judge Widener wrote the opinion, in which Senior Judge Phillips con-
curred. Judge Luttig concurred in the judgment.

_____

**COUNSEL**

**ARGUED:** Lawrence Lee Moise, III, VINYARD & MOISE, Abing-
don, Virginia, for Petitioner. Timothy Ward Gresham, PENN, STU-
ART, ESKRIDGE & JONES, Abingdon, Virginia, for Respondents.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

WIDENER, Circuit Judge:

The claimant, William Austin, appeals the denial of black lung benefits, asserting that relevant medical evidence was not considered and that the finding of rebuttal of the presumption of total disability pursuant to 20 C.F.R. § 727.203(b)(3) in favor of Clinchfield Coal Co., was not supported by substantial evidence. We agree that relevant medical evidence was not considered and that the decision of the Benefits Review Board affirming the decision of the ALJ was not supported by substantial evidence. We grant the petition for review and remand with instructions to award benefits.

I

Austin worked as an underground coal miner for at least 23 years, performing jobs involving heavy labor, from around 1952 until March 1975. X-ray taken as early as 1972 revealed pneumoconiosis, and by early 1974 he suffered progressively disabling symptoms of shortness of breath, coughing, and pain in his chest on exertion. Between November 1974 and February 1975, he experienced three or four episodes of a feeling of epigastric pressure, nausea, palpitations (fluttering or rapid beating or pounding of the heart felt by the patient),[1] and tachycardia (abnormally rapid heart beat).[2] He was admitted to the local hospital by Dr. Robinson in February 1975 for evaluation. Laboratory tests and electrocardiogram (EKG) showed no evidence of heart disease and Dr. Robinson diagnosed psychophysiological cardiovascular reaction[3] and silicosis.[4] Because of continuing pain in the

_____

[1] J.E. Schmidt, M.D., Attorney's Dictionary of Medicine and Word Finder P-21.
[2] Schmidt, supra note 1, at T-6.
[3] Psychophysiologic pertains to a physical disorder in which mental or emotional disturbances play a causative or aggravating role. Schmidt, supra note 1, at P-520.
[4] Silicosis is a disease of the lungs caused by the prolonged inhalation

2

left lower chest area, Austin was referred by Dr. Robinson to the Medicine Service at University of Virginia Hospital where he was admitted on May 6, 1975 to the care of attending physician, Dr. Julian Beckwith. An extensive cardiac and pulmonary evaluation revealed no evidence of primary cardiac disease. Austin was discharged on May 16, 1975 with a diagnosis of pneumoconiosis and with instructions not to return to work in the coal mines.

Austin filed a claim with the Industrial Commission for workmen's compensation benefits under Virginia law on June 25, 1975. His claim was denied because he had executed a waiver for occupational pneumoconiosis as a condition of employment, which had been approved by the Industrial Commission on advice of a physician that examination of Austin's lungs revealed fibro-nodose infiltration. Following the subsequent determination on January 16, 1986 of his federal claim by the Deputy Commissioner that he was not entitled to benefits, Austin requested and received a hearing before an administrative law judge which was held on March 9, 1988. However, the ALJ became ill before rendering a decision, and the case was transferred to another ALJ[5] who, with the agreement of the parties, made factual findings on the prior hearing record.

The ALJ found that the claimant had pneumoconiosis, established by x-ray, which was due to coal mine employment, and therefore was entitled to the presumption of disability under 20 C.F.R. § 410.490(b)(1)(i) and (b)(2). He concluded, however, that the employer had successfully rebutted total disability by proving that Austin was able to do his usual coal mine or comparable work according to 20 C.F.R. § 410.490(c). In reaching this conclusion, the ALJ credited the opinions of three out of six physicians who opined that the claimant's respiratory condition was not disabling. The ALJ rejected the opinion of Dr. Beckwith who stated that Austin was dis-

_____

of small particles of silicon dioxide. Schmidt, supra note 1, at S-155. Silicosis is sufficient to establish pneumoconiosis. Zimmerman v. Director, 871 F.2d 564, 566 (6th Cir. 1989); 20 C.F.R. § 718.201.

**5** Administrative Law Judge Everette E. Thomas.

abled from doing his regular work because he found the opinion was not documented and therefore inadequately reasoned. **6**

On review of that decision, the Benefits Review Board affirmed that the x-ray evidence sufficiently established pneumoconiosis under 20 C.F.R. § 410.490(b)(1)(i). The Board determined, however, that this invoked the presumption under 20 C.F.R. § 727.203(a)(1), and remanded the claim for consideration under 20 C.F.R.§ 727. The Board instructed the ALJ to compare the medical reports assessing the claimant's physical abilities with the exertional requirements of claimant's job duties. The Board pointed out that the issue on rebuttal was not whether the medical tests had yielded qualifying values, but whether the record as a whole established that the claimant was totally disabled. The Board also instructed the ALJ to address the opinion of Dr. Claustro, who had opined that the claimant's cardiopulmonary system and function were within normal limits, as this might be relevant to an inquiry under 20 C.F.R.§ 727.203(b)(3). The Board noted that a finding of rebuttal under § 727.203(b)(4) was precluded as a matter of law, based on Mullins Coal Co. v. Director, OWCP, 484 U.S. 135 (1987).

On remand, the ALJ considered the heavy labor requirements of the claimant's job as instructed and determined that the employer had failed to rebut, under C.F.R. § 727.203(b)(2), the interim presumption of total disability. However, the ALJ found that the employer had rebutted the presumption that the claimant's total disability arose out of coal mine employment pursuant to § 727.203(b)(3) based on the opinion of Dr. Sargent that the claimant's respiratory disability was due to cardiovascular disease and asthma or chronic bronchitis. The ALJ determined that the Board had affirmed his decision not to consider the opinion of Dr. Beckwith. He did not, however, consider the opinion of Dr. Claustro as instructed by the Board.

The decision of the ALJ was affirmed by the Board on June 21, 1994. The Board found that the ALJ properly refrained from considering Dr. Robinson's opinion under § 727.203(b)(3) because, although Dr. Robinson had diagnosed the claimant as having silicosis,

_____

**6** Dr. Beckwith's opinion will be discussed in more detail later in the opinion.

4

he offered no opinion regarding the cause of the claimant's disability. The Board likewise found that the ALJ acted correctly in according no weight to the opinion of Dr. Beckwith "by implicitly incorporating the determination in his first Decision and Order that Dr. Beckwith's opinion is not entitled to any weight inasmuch as the physician failed to provide an explanation for his diagnosis that claimant was disabled from doing his usual work because of silicosis." The Board also held that "Dr. Beckwith's opinion is not entitled to greater weight on the basis that the physician was chosen by a party other than counsel, since the identity of a party who hires a medical expert does not, by itself, demonstrate partiality or partisanship on the part of the physician." The Board went on to find that the ALJ permissibly credited the opinion of Dr. Sargent that claimant's disability was "due to cardiac conditions and asthma which were not related to his coal mine employment" because it was "better supported by the underlying objective evidence of record." What that evidence was the Board did not relate.

II

Austin seeks review of the last decision of the Board. He asserts that the Board erred in affirming the ALJ's decision because the ALJ erred as a matter of law in failing to consider all relevant medical evidence and that the finding of rebuttal under § 727.203(b)(3) is not supported by substantial evidence, is not rational, and is not in accordance with the law. The standard of review for errors of law is de novo. Thorn v. Itmann Coal Co., 3 F.3d 713, 718 (4th Cir. 1993). However, findings of fact must be affirmed if supported by substantial evidence. Thorn, 3 F.3d at 718.

To set the case before us properly, it has now been established that Austin has pneumoconiosis due to coal mine employment, that he is totally disabled from performing his usual or comparable work, and that he is entitled to the presumption under 20 C.F.R. § 727.203(a)(1) that his total disability is caused by coal miners' pneumoconiosis. Those questions are beyond review. The only questions before us are whether correct legal standards were used in the decision to deny benefits and whether substantial evidence supports the finding that the defendant ruled out any causal relationship between Austin's pneu-

5

moconiosis and his total disability. <u>Bethlehem Mines Corp. v. Massey</u>, 736 F.2d 120, 123 (4th Cir. 1984).**7**

III

A part of the Board's error is so patent as to require only brief comment. The Board held that the opinions of Austin's treating physicians were not entitled to any greater weight than any other opinion. That, of course, is error. We had held in <u>Thorn</u>, 3 F.3d at 714, n.3, and before, that the opinion of a claimant's treating physician should be given great weight, although not dispositive. Drs. Robinson and Beckwith were treating physicians, and they, Dr. Beckwith, especially, who was in charge of Austin's ten-day hospital stay, were in the best position of any of the physicians connected with this case to give their opinions. Far from discounting the opinions of these physicians as they did, both the ALJ and the Board should have accorded them great weight and their refusal so to do might well have called for a remand, at least, had there been no other error. But there was.

IV

We next address whether the Board erred in affirming the ALJ's decision not to consider the opinion of Dr. Beckwith. The record shows that Austin submitted copies of medical records of his hospitalization for treatment from May 5, 1975 through May 16, 1975 at the University of Virginia Hospital.**8** The Discharge Summary gives patient history and the results of physical examinations and diagnostic tests that were performed on Austin during his 10-day hospitalization, including blood work, EKG, chest x-ray, lung scan, pulmonary function tests, and consultations by pulmonary specialists. The records contain copies of the actual test results as well as daily progress notes written by the treating physicians. While several physicians were

_____

**7** Neither the ALJ nor the Board considered whether or not Austin's acknowledged black lung disease contributed to his disability. See generally, e.g., <u>Massey</u> and <u>Adkins v. Dept. of Labor, etc.</u>, 824 F.2d 287 (4th Cir. 1987). Because we require the award of benefits, we do not reach this question.

**8** Claimant's Exhibit No. 1. The ALJ recited that he had "sighted" each exhibit.

involved in Austin's care at this teaching hospital, Dr. Beckwith is listed as the attending physician, and it is obvious from the records that he is the physician responsible for and directing Austin's diagnosis and treatment.[9]

The progress notes from this hospitalization contain daily handwritten evaluations and impressions by Dr. Beckwith and the other treating physicians. In his report to Dr. Robinson, the referring physician, dated May 28, 1975, Dr. Beckwith writes that Austin was found to have silicosis with decrease in pulmonary function, and that he did not think that Austin's pain or dyspnea were due to heart disease. In his opinion, Austin was "disabled from doing his usual work because of the silicosis."

_____

[9] The Discharge Summary states in part:

> The patient was evaluated by Dr. Beckwith which revealed heart of normal size and contour and no significant cardiovascular abnormalities. [Austin] underwent a Treadmill test, achieving 9 Mets and a heart rate of 135 without occurrence of chest pain or ST changes on EKG. The test had to be stopped secondary to shortness of breath. The impression was that this chest pain was not of a cardiovascular origin. The patient also underwent pulmonary function studies which revealed significant decreases in vital capacity (39%, 63 predicted). FEV 1 (34 and 36% predicted) and MMEFR (25% and 34% of predicted). PO was 60 and 64, $pCO_2$ 31 and 35, pH 7.38, 7.4. $CO_2$ diffusion was markedly decreased with values 23/34 on two occasions. For these values he was seen in consultation by the Pulmonary group who reviewed his chest films and believed them to show moderately severe fibrosis and small nodular disease consistent with pulmonary fibrosis. Although silicosis was the most likely suspect the patient was felt to be quite young and not to have had a large exposure. It was suspected that his pulmonary function studies were misleading secondary to the patient's noncompliance. At the recommendation of the Pulmonary Team the patient had an anti-tryptic activity scan and lung volumes performed pending at time of discharge. He also underwent a lung scan which was abnormal, revealing uptake in the apices bilaterally.

University of Virginia Hospital Discharge Summary for William Austin, admitted 5-6-75, discharged 5-16-75.

7

This is the opinion that the ALJ found to be undocumented, and thus not well-reasoned, and of no weight, which finding was affirmed by the Board.

Far from being undocumented and not well reasoned, Dr. Beckwith's opinion is documented as well as any physician's opinion that this panel has examined in a black lung case. Even if there have been filed better documented opinions, none has come to our attention. Austin, who had not before filed a black lung claim, was sent to the teaching hospital at the university by Dr. Robinson,"with particular reference to the possibility of heart disease or possibly some anomaly of the arteries leading to the left upper extremity," where he was admitted for treatment and stayed about ten days. His attending physician was Dr. Beckwith. He was treated, or there participated in his treatment, at that hospital, or he was examined by, at least 11 other physicians in the various departments of the hospital, including, at least, Drs. Hunt, Minor, Entelis, Fritz, Sheffer, Dec, Teates, Nordensell, Craddock, Feats, and Wood. The documentation filed with Dr. Beckwith's letter discloses that Austin had been engaged in hard labor in the mines. He had been a cutter, a brick layer, and a masonry assistant, which involved carrying heavy loads of mortar and stone greater than 100 lbs. several yards and flinging that load onto platforms and work areas. The documents accompanying Dr. Beckwith's opinion are everything which might be expected from a modern medical center and consist of 69 pages of reports of every test and consultation with respect to Austin's ailments.

We are thus of opinion that Dr. Beckwith's opinion was not only well documented, it was well reasoned. Indeed, it is by far the best documented and best reasoned opinion in this record.

We are further of opinion that the conclusions of the ALJ and the Board, that the opinion of Dr. Beckwith was entitled to no weight, are not only not supported by substantial evidence, they are contrary to law. Both the ALJ and the Board simply declined to consider the most probative evidence in the case.

V

If that were not all, the record shows further substantial error on the part of the ALJ and the Board. As stated, we review only the decision of the Board, that

8

> Claimant's total disability was due to cardiac conditions and asthma which were not related to his coal mine employment.

Decision of the Board of June 21, 1994, p.3. The Board specified in its decision that this finding was based on the fact that the ALJ had "permissibly credited the opinion of Dr. Sargent." Board decision of June 21, 1994, p.3. Dr. Sargent was one of the physicians who examined Austin at the instance of the employer. There are two decisions by the ALJ and two by the Board, and we have examined all of them.

Beside Dr. Beckwith, of the hospital at the university, the four administrative decisions rely only on Drs. Buddington (Director), Dahan (employer), Robinette (Austin), Modi (Austin), Sargent (employer), Robinson (Austin), Claustro (Director), and Garzon (employer), with the parentheses following the name to indicate who introduced that physician's opinion into evidence. Drs. Dahan, Robinette, Modi, Sargent and Garzon were Board certified internists. Dr. Beckwith, obviously Board certified, was Chief of the Cardiology Section at the University of Virginia School of Medicine. Whether or not the other physicians were Board certified is not shown.

We have examined the testimony and statements of each of these physicians whose opinions together make up all the medical evidence on which the ALJ and the Board have relied to decide this case. None of them except Dr. Sargent found "cardiac conditions" consisting of "cardiovascular disease." None of them except Dr. Sargent found asthma, either that Austin had asthma or that it was the cause of Austin's total disability. Neither the ALJ nor the Board accounted for this wide discrepancy in the evidence. Indeed, neither mentioned the discrepancy.

"[P]neumoconiosis means a chronic dust disease of the lung and its sequelae including respiratory and pulmonary impairments. . . ." 20 C.F.R. § 718.201. All of the physicians whose testimony and reports make up this medical record, except Drs. Beckwith and Robinson and the other physicians at the university (who were treating physicians), examined Austin especially on account of his claim of pneumoconiosis. The common name of the disease is even black lung. So those physicians were examining Austin's lungs and respiratory system. If asthma was present, it strains credulity to believe that only Dr. Sar-

9

gent correctly detected asthma. Dr. Beckwith and the other physicians at the university commenced their examination of Austin because of the reference of his local treating physician "to the possibility of heart disease or possibly some anomaly of the arteries." Even on that track, those physicians were of the opinion expressed by Dr. Beckwith, that Austin had silicosis and not heart disease. Again, it strains credulity to find that no other one of those physicians mentioned, except Dr. Sargent, found that Austin had "cardiac conditions," as found by the Board, consisting of "cardiovascular disease" in the words of Dr. Sargent. And the physicians at the university also did not find asthma.

Not a scrap of paper in this record, except the opinion of Dr. Sargent, is inconsistent with the opinion of Dr. Beckwith, that Austin had silicosis and that Austin was disabled from doing his usual work because of the silicosis. The evidence is simply overwhelming that the opinion of Dr. Beckwith is correct, and we so find. Not another scrap of paper in this record is consistent with the opinion of Dr. Sargent that Austin had asthma; not one other physician so found.

VI

In ordinary circumstances, we are not supposed to weigh evidence in such a case, and we rarely do. The claim of Austin, however, has been pending for more than 20 years. He has been examined by probably two dozen physicians. No one has suggested any medical test relevant to his claim which has not been performed. The evidence is simply overwhelming that he has pneumoconiosis and that he is unable to perform his usual coal mine employment on that account.

We are of opinion that substantial evidence does not support the finding of rebuttal under 20 C.F.R. § 727.203(b)(3).

We are of opinion that the findings of both the ALJ and the Board, that the report of Dr. Beckwith was not entitled to any weight, is not only not supported by substantial evidence, it is contrary to law. See 5 U.S.C. § 706; 33 U.S.C. § 921(b)(3).

We are of opinion that the finding of the Board, that Austin's total disability was due to cardiac conditions and asthma, is not supported by substantial evidence.

10

It is time for this case to end. We vacate the order of the Board and remand the case to the Board, which will see to the entry of benefits for Austin. See <u>Petry v. Califano</u>, 577 F.2d 860, 867 (4th Cir. 1978).

<u>PETITION FOR REVIEW GRANTED; VACATED</u>
<u>AND REMANDED WITH INSTRUCTIONS</u>

11